HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMES JANTOS, individually, and on behalf of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>DIRECTV, a Delaware Corporation; DIRECTV, LLC, a California Limited Liability Corporation; and QWEST CORPORATION d/b/a CENTURYLINK QC, a Colorado Corporation,<br><br>Defendants. | Case No. 2:18-CV-00413 TSZ<br><br>**DECLARATION OF NICOLE MARTIN IN SUPPORT OF DEFENDANTS DIRECTV AND DIRECTV, LLC'S MOTION TO COMPEL ARBITRATION AND STAY LITIGATION** |

I, Nicole Martin, declare as follows:

1. I have been employed by AT&T, Inc., the parent company for DIRECTV, LLC, since 1998, where I am a Lead Internal Business Operations Consultant. I am over the age of eighteen, competent to testify, and state the below based upon my personal knowledge.

2. In my current position, I work with customer data as part of my daily job functions. I am also familiar with the written contracts that govern DIRECTV's relationships with its customers, including the Customer Agreement (the "Customer Agreement"), the

DECLARATION OF NICOLE MARTIN IN SUPPORT OF
DEFENDANTS' MOTION TO COMPEL ARBITRATION
AND STAY LITIGATION - 1
[CASE NO. 18-cv-00413-TSZ]

Residential Customer Agreement, and the Equipment Lease Addendum, and the process by which customers receive the Customer Agreement, the Residential Customer Agreement, and the Equipment Lease Addendum. I am readily familiar with DIRECTV's methods for keeping and maintaining its records relating to its customers' written contracts with DIRECTV. I have reviewed these files with respect to Plaintiff James Jantos ("Plaintiff") and I am knowledgeable and familiar with their contents.

### The Process to Become a DIRECTV Customer

3. DIRECTV provides digital television services to consumers nationwide. To obtain these services, a potential DIRECTV customer obtains, either directly from DIRECTV or a retailer, the equipment necessary to receive DIRECTV's satellite signal.

4. The relationship between DIRECTV and each customer is governed by the Customer Agreement (now the Residential Customer Agreement). The Customer Agreement is sent to each potential subscriber upon activation and is always available on DIRECTV's website, www.directv.com. The Customer Agreement sets forth the parties' rights and obligations and explains the terms and conditions for subscribing to DIRECTV.

5. After a customer signs up for DIRECTV service, a welcome and confirmation letter is generated and sent to the customer's home address or, if provided, the customer's email address. That letter or email contains a summary of charges and also refers the customer to DIRECTV's Customer Agreement. The hard copy letter also encloses a full copy of the Customer Agreement. The email (if the customer had provided an email address) provides links to the Customer Agreement and also informs the customer that he or she will receive a separate email, within 24 hours, which contains a copy of the Customer Agreement. The Customer Agreement is then sent. Even if a customer signs up for bundled DIRECTV services through

DECLARATION OF NICOLE MARTIN IN SUPPORT OF
DEFENDANTS' MOTION TO COMPEL ARBITRATION
AND STAY LITIGATION - 2
[CASE NO. 18-cv-00413-TSZ]

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600

CenturyLink and is billed monthly by CenturyLink, DIRECTV always sends a copy of the Customer Agreement to the customer directly upon activation of the DIRECTV services. Thus, at the very outset of the relationship between DIRECTV and the customer, the customer is made aware of the terms under which service is provided, including the agreement to arbitrate disputes.

6. A DIRECTV customer must receive equipment (satellite dish, set top boxes, etc.) at the time of installation in order to receive DIRECTV satellite services. When a DIRECTV installer arrives at the customer's home to install receiving equipment, the Equipment Lease Addendum is presented to the customer on a handheld device (previously in hard copy form) for the customer to review. That Equipment Lease Addendum contains references to some of the key provisions of the Customer Agreement, including the obligation to arbitrate disputes. If the customer does not acknowledge receipt of the Equipment Lease Addendum and agree to its terms by signing the digital work order presented to that customer, the installation does not move forward.

**The Customer Agreement Between Plaintiff and DIRECTV**

7. Plaintiff ordered DIRECTV on October 30, 2008, and DIRECTV equipment was installed and activated on November 13, 2008.

8. Immediately after Plaintiff's DIRECTV services were activated in November 2008, DIRECTV would have emailed and/or mailed a copy of the then-operative April 24, 2007 Customer Agreement. A true and correct copy of the April 24, 2007 Customer Agreement is attached hereto as **Exhibit A**.

9. The April 24, 2007 Customer Agreement begins with the following paragraph:

> **THIS DOCUMENT DESCRIBES THE TERMS AND CONDITIONS OF YOUR RECEIPT AND PAYMENT OF DIRECTV SERVICE AND IS SUBJECT TO ARBITRATION (SECTION 9). IF YOU DO NOT ACCEPT**

DECLARATION OF NICOLE MARTIN IN SUPPORT OF
DEFENDANTS' MOTION TO COMPEL ARBITRATION
AND STAY LITIGATION - 3
[CASE NO. 18-cv-00413-TSZ]

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600

<mark>**THESE TERMS, PLEASE NOTIFY US IMMEDIATELY AND WE WILL CANCEL YOUR SERVICE. IF YOU INSTEAD DECIDE TO RECEIVE OUR SERVICE, IT WILL MEAN THAT YOU ACCEPT THESE TERMS AND THEY WILL BE LEGALLY BINDING.**</mark>

Thus, it is made clear to the customer that if he does not agree to accept the terms of the Customer Agreement and arbitration, he should notify DIRECTV immediately and service will be cancelled.

10. I have checked DIRECTV's records and neither after activating his DIRECTV services nor after receiving the April 24, 2007 Customer Agreement did Plaintiff contact DIRECTV to dispute the terms or conditions in the Customer Agreement, or to cancel his DIRECTV service. Any customer complaint or written communication would have been documented in DIRECTV's customer account history. A true and correct copy of Plaintiff's DIRECTV account history is attached hereto as **Exhibit B**.

### Equipment Lease Addendum

11. The relationship between DIRECTV and each customer is also governed by the Equipment Addendum, which is always available on DIRECTV's website, www.directv.com.

12. As a condition of having the receiving equipment installed, Plaintiff would have had to sign the Equipment Lease Addendum and a hard copy of the installation work order, acknowledging receipt of the Equipment Lease Addendum and agreeing to its terms prior to any installation. Because Plaintiff's service was installed in November 2008, DIRECTV no longer has a copy of Plaintiff's original signed Equipment Lease Addendum or installation Work Order, as it is past the required document retention dates. However, Plaintiff would have had to sign both documents, otherwise the equipment would not have been installed. The Equipment Lease

DECLARATION OF NICOLE MARTIN IN SUPPORT OF
DEFENDANTS' MOTION TO COMPEL ARBITRATION
AND STAY LITIGATION - 4
[CASE NO. 18-cv-00413-TSZ]

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600

Addendum explains the terms and conditions of leasing equipment from DIRECTV for the purpose of accessing DIRECTV's services.

13. The Equipment Lease Addendum from 2008, which was the operative version when Plaintiff became a DIRECTV subscriber, specifically states that "The Customer Agreement, together with the ELA, comprise the terms of your service agreement with DIRECTV." The Equipment Lease Addendum also specifically references the arbitration provision contained the Customer Agreement: "ARBITRATION. You and DIRECTV agree that both parties will resolve any dispute under this ELA, the DIRECTV Customer Agreement or regarding your DIRECTV service, through binding arbitration as fully set forth in the DIRECTV Customer Agreement." A true and correct copy of the 2008 Equipment Lease Addendum is attached hereto as **Exhibit C**.

## The Residential Customer Agreement Between Plaintiff and DIRECTV

14. On June 24, 2014, DIRECTV revised its Customer Agreement and issued the June 24, 2014 Residential Customer Agreement. The June 24, 2014 Residential Customer Agreement contains a substantially similar clause with respect to arbitration:

> **THIS DESCRIBES THE TERMS AND CONDITIONS OF YOUR RECEIPT OF AND PAYMENT FOR DIRECTV SERVICE AND IS SUBJECT TO ARBITRATION (SECTION 9) AND DISCLAIMER OF WARRANTIES (SECTION 8). IF YOU DO NOT ACCEPT THESE TERMS, PLEASE NOTIFY US IMMEDIATELY AN WE WILL CANCEL YOUR ORDER OR SERVICE SUBJECT TO APPLICABLE CANCELLATION TERMS AND/OR FEES (SECTION 5). IF YOU INSTEAD DECIDE TO RECEIVE YOUR SERVICE, IT WILL MEAN THAT YOU ACCEPT THESE TERMS AND THEY WILL BE LEGALLY BINDING.**

A copy of the revised Residential Customer Agreement was issued to all DIRECTV customers via email and/or mail at least 30 days prior to the date the Residential Customer Agreement was

DECLARATION OF NICOLE MARTIN IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY LITIGATION - 5
[CASE NO. 18-cv-00413-TSZ]

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600

to take effect, and was available on DIRECTV's website. A true and correct copy of the June 24, 2014 Residential Customer Agreement is attached hereto as **Exhibit D**.

15. Plaintiff ordered additional DIRECTV services in November 2014. Plaintiff was sent an Order Confirmation email regarding his November 25, 2014 order and December 2, 2014 installation appointment. The email notification provided links for Plaintiff to re-review the DIRECTV Customer Agreement and Equipment Lease Addendum, and stated that Plaintiff would be required to sign the Equipment Lease Addendum prior to installation. A true and correct copy of the email notification to Plaintiff is attached hereto as **Exhibit E**. A true and correct copy of the operative Equipment Lease Addendum is attached hereto as **Exhibit F.**

16. Since Plaintiff originally ordered DIRECTV in 2008, DIRECTV has changed to using handheld devices for digital signature of the Equipment Lease Addendum and work orders. DIRECTV's policy remains the same that the customer is required to sign the Equipment Lease Addendum and equipment work order prior to DIRECTV installing any equipment or services. Plaintiff signed the digital Work Order and new Equipment Lease Addendum on December 2, 2014, agreeing to its terms and conditions, including arbitration. A true and correct copy of Plaintiff's signatures is attached hereto as **Exhibit G**.

17. On March 1, 2018, DIRECTV revised its Customer Agreement and issued the March 1, 2018 Residential Customer Agreement. The March 1, 2018 Residential Customer Agreement provides a substantially similar introductory arbitration clause:

> **THIS DESCRIBES THE TERMS AND CONDITIONS OF YOUR RECEIPT OF AND PAYMENT FOR DIRECTV® SERVICE.**
>
> THIS AGREEMENT REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES, RATHER THAN JURY TRIALS OR CLASS ACTIONS (SEE SECTION 8), AND ALSO LIMITS THE

DECLARATION OF NICOLE MARTIN IN SUPPORT OF
DEFENDANTS' MOTION TO COMPEL ARBITRATION
AND STAY LITIGATION - 6
[CASE NO. 18-cv-00413-TSZ]

**CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600

REMEDIES AVAILABLE TO YOU IN THE EVENT OF A DISPUTE (SEE SECTION 7).

Consistent with DIRECTV policy, a copy of the March 1, 2018 Residential Customer Agreement was emailed and/or mailed to all DIRECTV customers at least 30 days prior to the date the Residential Customer Agreement was to take effect, and is available on DIRECTV's website at https://www.att.com/legal/terms.dtv_residentialCustomerAgreement.html. A true and correct copy of the March 1, 2018 Residential Customer Agreement is attached hereto as **Exhibit H**.

18. Again, after receiving the March 1, 2018 Residential Customer Agreement, Plaintiff did not contact DIRECTV to object to the terms of the March 1, 2018 Residential Customer Agreement or to cancel his DIRECTV services. Any customer complaint or written communication would have been documented in DIRECTV's customer account history. *See* Exhibit B. Plaintiff remains a DIRECTV subscriber today.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 10th day of May, 2018, in El Segundo, California

_____
NICOLE MARTIN

DECLARATION OF NICOLE MARTIN IN SUPPORT OF
DEFENDANTS' MOTION TO COMPEL ARBITRATION
AND STAY LITIGATION - 7
[CASE NO. 18-cv-00413-TSZ]

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600

## CERTIFICATE OF SERVICE

The undersigned certifies that on _____, 2018, I electronically filed the foregoing with the Clerk of the Court by the CM/ECF System which will send notification of such filing to those registered to receive electronic notices by email transmission at the email addresses provided.

I declare under penalty of perjury under the laws of the State of Washington and the United States that the foregoing is true and correct.

Signed this _____ day of May, 2018, at Seattle, Washington.

> *s/ Emily J. Harris*
> Emily J. Harris, WSBA No. 35763
> CORR CRONIN MICHELSON
> BAUMGARDNER FOGG & MOORE LLP
> 1001 Fourth Avenue, Suite 3900
> Seattle, Washington 98154-1051
> Telephone: (206) 652-8600
> Facsimile: (206) 652-8650
> eharris@corrcronin.com

DECLARATION OF NICOLE MARTIN IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY LITIGATION - 8
[CASE NO. 18-cv-00413-TSZ]

984 02 ie09bc155q

**CORR CRONIN MICHELSON**
**BAUMGARDNER FOGG & MOORE LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600