1                                                    Hon. Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES JANTOS, individually, and on
behalf of similarly situated individuals,

                 Plaintiff,

      v.

DIRECTV, a Delaware Corporation;
DIRECTV, LLC, a California Limited
Liability Corporation; and QWEST
CORPORATION d/b/a CENTURYLINK
QC, a Colorado Corporation,

                 Defendants.

NO. 2:18-cv-00413-TSZ

RESPONSE TO DIRECTV'S MOTION
TO COMPEL ARBITRATION OR
MOTION TO DISMISS

NOTE ON MOTION CALENDAR:
  June 22, 2018

Sirianni Youtz
Spoonemore Hamburger
701 Fifth Avenue, Suite 2560
Seattle, Washington 98104
Tel. (206) 223-0303   Fax (206) 223-0246

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................... 1

II.    FACTS ........................................................................................................ 2

    A.    Jantos' Personally Identifiable Information Is Publicly
           Published on the Internet. ........................................................... 2

    B.    Jantos' Subscription with DirecTV. .............................................. 3

           1.    The 2007 Customer Agreement. ...................................... 3

           2.    The 2014 Customer Agreement. ...................................... 4

           3.    The 2018 Customer Agreement. ...................................... 4

III.    ARGUMENT ............................................................................................... 5

    A.    Standards for Evaluating the Enforceability of Arbitration
           Clauses. ...................................................................................... 5

           1.    The Federal Policy Favoring Arbitration Does Not
                Apply to the Question of Whether a Party Has
                Agreed to Arbitrate. ....................................................... 5

           2.    The Question of Whether a Contract Term is Illusory
                or Unconscionable is a "Gateway Dispute" that is
                Not Preempted by the FAA, and is Governed by
                State Law. ....................................................................... 6

    B.    The Arbitration Clauses Are Unenforceable. ................................ 7

           1.    DirecTV Cannot Establish that Jantos Received the
                2018 CA. ........................................................................ 8

                a.    If DirecTV Used Email to Provide Notice, then
                    it Likely Used an Email Address that
                    CenturyLink Discontinued in 2017. .................... 8

                b.    DirecTV Fails to Prove Receipt by United States
                    Mail. .................................................................. 9

RESPONSE TO DIRECTV'S MOTIONS – ii
[Case No. 2:18-cv-00413-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
999 THIRD AVENUE, SUITE 3650
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

2.   The Limitation of Remedies Clause in the Both the 2007 CA and the 2014 CA Arbitration Agreement Render the Arbitration Clause Unenforceable. ........................................ 10

a.   DirecTV's Attempt to Exculpate Itself from Violations of Federal Law Renders the 2007 CA and 2014 CA Arbitration Clauses Void Under the Federal Doctrine of Effective Vindication. ................................ 12

b.   The Purported Elimination of Jantos' Right to Seek a Remedy Under 47 U.S.C. § 338 Also Renders the 2007 CA and 2014 CA Arbitration Clauses Unconscionable and Non-Mutual Under Washington State Law. ........................................................ 14

3.   DirecTV's Reservation of the Right to Change Terms Is Unconscionable Given that Rejection Would Result in a Financial Penalty. ....................................................... 16

C.   Jantos Has Standing to Pursue Remedies Against DirecTV. ............................................................................................ 19

IV.   CONCLUSION ................................................................................. 19

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
999 THIRD AVENUE, SUITE 3650
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

# TABLE OF AUTHORITIES

## CASES

*Adler v. Fred Lind Manor*,
153 Wn.2d 331, 103 P.3d 773 (2004) ...................................................7, 8, 18, 19

*Am. Exp. Co. v. Italian Colors Rest.*,
570 U.S. 228, 133 S. Ct. 2304 (2013) ...........................................................13, 14

*AT&T Mobility LLC v. Concepcion*,
__ U.S. __, 131 S. Ct. 1740 (2011) ...................................................................6, 14

*Barnes v. Indep. Auto. Dealers Ass'n Health & Benefit Plan*,
64 F.3d 1389 (9th Cir. 1995) ..................................................................................11

*Chiron Corp. v. Ortho Diagnostics Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ..................................................................................5

*Comer v. Micor, Inc.*,
436 F.3d 1098 (9th Cir. 2006) ..................................................................................5

*Coneff v. AT&T Corp.*,
673 F.3d 1155 (9th Cir. 2012) ..................................................................................6

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938, 115 S. Ct. 1920 (1995) ......................................................................6

*Frederick Meiswinkel, Inc. v. Laborer's Union Local 261*,
744 F.2d 1374 (9th Cir. 1984) ................................................................................12

*Gandee v. LDL Freedom Enters., Inc.*,
176 Wn.2d 598, 293 P.3d 1197 (2013) ..................................................................15

*Global Naps, Inc. v. Bell Atlantic-New Jersey, Inc.*,
287 F. Supp. 2d 532 (D. N.J. 2003) ........................................................................12

*Gorden v. Lloyd Ward & Assocs.*,
180 Wn. App. 522, 323 P.3d 1074 (2014) ...............................................................7

*Graham Oil Co. v. ARCO Prods. Co.*,
43 F.3d 1244 (9th Cir. 1994) ............................................................................13, 14

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
999 THIRD AVENUE, SUITE 3650
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

*Hill v. Garda CL Nw., Inc.*,
   179 Wn.2d 47, 308 P.3d 635 (2013) ................................................6, 7, 14, 15

*Howsam v. Dean Witter Reynolds, Inc.*,
   537 U.S. 79, 123 S. Ct. 588 (2002) .........................................................5

*Ingle v. Circuit City Stores, Inc.*,
   328 F.3d 1165 (9th Cir. 2003) ...............................................................14

*Kaiser Aluminum & Chem. Corp. v. Dep't of Labor & Indus.*,
   57 Wn. App. 886, 790 P.2d 1254 (1990) ..................................................9

*Lowden v. T-Mobile, USA, Inc.*,
   2006 U.S. Dist. LEXIS 94861 (W.D. Wash., April 13, 2006) ....................9, 10

*Luna v. Household Fin. Corp. Iii*,
   236 F. Supp. 2d 1166 (W.D. Wash. 2002) .............................................15

*Matsko v. Dally*,
   49 Wn.2d 370, 301 P.2d 1074 (1956) ....................................................9

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614, 105 S. Ct. 3346 (1985) ...................................................13

*Nelson v. McGoldrick*,
   127 Wn.2d 124, 896 P.2d 1258 (1995) ...................................................7

*Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*,
   636 F.2d 51 (3d Cir. 1980) ....................................................................5

*Perez v. DirecTV Grp. Holdings, LLC*,
   251 F. Supp. 3d 1328 (C.D. Cal. 2017)...............................................15, 17, 19

*Rajagopalan v. NoteWorld, LLC*,
   718 F.3d 844 (9th Cir. 2013).................................................................5

*Riensche v. Cingular Wireless LLC*,
   2006 U.S. Dist. LEXIS 93747 (W.D. Wash. 2006) ..................................18

*Rosenthal-Zuckerman v. Epstein, Becker & Green Long Term Disability
   Plan*,
   39 F. Supp. 3d 1103 (C.D. Cal. 2014)...................................................11

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
999 THIRD AVENUE, SUITE 3650
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

*Samson v. NAMA Holdings, LLC,*
    637 F.3d 915, 2009 U.S. Dist. LEXIS 130663 (9th Cir. 2010) ...........................................5

*Schroeder v. Fageol Motors, Inc.,*
    86 Wn.2d 256, 544 P.2d 20 (1975) ...................................................................................7

*Ting v. AT&T,*
    319 F.3d 1126 (9th Cir. 2003) .........................................................................................13

*United Steelworkers v. Warrior & Gulf Nav. Co.,*
    363 U.S. 574, 80 S. Ct. 1347 (1960) ................................................................................5

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.,*
    489 U.S. 468, 109 S. Ct. 1248 (1989) ..............................................................................5

*Yakima County (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima,*
    122 Wn.2d 371, 858 P.2d 245 (1993) ..............................................................................7

**STATUTES**

47 U.S.C. § 206 ...............................................................................................................12

47 U.S.C. § 207 ...............................................................................................................12

47 U.S.C. § 338(i)(4) ......................................................................................................1, 2

47 U.S.C. § 338(i)(4)(A) ...................................................................................................11

47 U.S.C. § 338(i)(7) ..................................................................................................1, 2, 12

9 U.S.C. § 2 ........................................................................................................................6

**TREATISES**

Richard A. Lord, WILLISTON ON CONTRACTS, § 32:5 (4th ed. 2010) ...................................11

**OTHER AUTHORITIES**

Black's Law Dictionary (9th ed. 2009) ..............................................................................11

RESPONSE TO DIRECTV'S MOTIONS – vi
[Case No. 2:18-cv-00413-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
999 THIRD AVENUE, SUITE 3650
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

## I.  INTRODUCTION

The personal information of James Jantos, derived from his CenturyLink and DirecTV account and billings, was published on the Internet for the world to view. Jantos happened to stumble upon his personal data while he was searching for a telephone number.  Not only was he able to view his own information, the information of other subscribers was made public as well.  CenturyLink and DirecTV, who bundled and jointly billed for their services, placed customer data on the web without any type of protection.  Anyone in the world with an internet connection had access the names, billing addresses, account numbers, services received, and other billing information of many DirecTV subscribers.  This is a direct violation of 47 U.S.C. § 338, a statute that prohibits the disclosure of "personally identifiable information concerning any subscriber with the prior written or electronic consent of the subscriber concerned and shall take such action as are necessary to prevent unauthorized access to such information by a person other than the subscriber."  47 U.S.C. § 338(i)(4).  Jantos, on his own behalf and on behalf other aggrieved subscribers, sued CenturyLink and DirecTV under 47 U.S.C. § 338(i)(7), the section that enforces the privacy mandates of the statute.

DirecTV now moves force Jantos into individual arbitration.  It maintains three Consumer Agreements ("CAs") require arbitration: (1) a customer agreement in existence with Jantos first activated his DirecTV services, (2) a version updated seven years later, and (3) another version updated earlier this year.   These CAs are unenforceable for three reasons.   *First*, the first two CAs contain impermissible exculpatory clauses that proport to eliminate a consumer's right to seek remedies under federal law. These agreements violate federal doctrine of effective vindication, in addition to being unconscionable under Washington State law.  *Second*, all three agreements provide that a rejection of any change in terms will result in the imposition of fees and penalties, undermining the "lack of meaningful choice" necessary to be

RESPONSE TO DIRECTV'S MOTION – 1
[Case No. 2:18-cv-00413-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

enforced under Washington law.  **Third**, DirecTV fails to establish that the recent 2018 update to the CA was ever sent to Jantos.  In fact, it appears that DirecTV may have used an email address that CenturyLink deactivated in 2017.  With no valid agreement to arbitrate, DirecTV's motion to compel arbitration should be denied.

## II.  FACTS

### A.    Jantos' Personally Identifiable Information Is Publicly Published on the Internet.

In 2017 Jantos searched for a telephone number using a common internet search engine. Declaration of James Jantos, ¶8. He discovered that his March 2017 bill from CenturyLink and DirecTV/DirecTV, LLC, was publicly available for anyone to view on the internet.[1]   Dkt. No. 1, ¶¶8, 14, 21. The bill contained personally identifiable information, as defined by 47 U.S.C. § 338, including his name, address, phone number, phone numbers that he had called and received calls from, and his DirecTV/DirecTV, LLC, billings.  *Id.*, ¶¶8, 22.  This information was not hidden – it appeared on the very first page of the search results.  Jantos Decl., ¶8.  The public disclosure of this information is strictly prohibited by 47 U.S.C. § 338(i)(4), and subject to civil enforcement under 47 U.S.C. § 338(i)(7).

Concerned, and unsure if the information was only available to him due to his previous online access to his account, he investigated the scope of the disclosure. Dkt. No. 1, ¶8.  He discovered he was able to easily access personally identifying information of other subscribers of CenturyLink and DirecTV/DirecTV, LLC, including charges on other subscribers DirecTV/DirecTV, LLC, bills.  *Id.*, ¶23.  Like the information he discovered online about himself, he was able to view the names, addresses, phone number, subscriptions, and bills from other subscribers.  *Id.*  In order to confirm that the

---

[1] As discussed in the accompanying Response to CenturyLink's Motion to Dismiss, CenturyLink and DirecTV have bundled their services together and bill those services in a single bill.

RESPONSE TO DIRECTV'S MOTION – 2
[Case No. 2:18-cv-00413-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303  FAX (206) 223-0246

information was available to others, he asked another individual to attempt to access information from his computer as well.  Like Jantos, this individual was able to access personally identifiable information of DirecTV/DirecTV, LLC, subscribers.  *Id.*, ¶8. Jantos alerted CenturyLink to the disclosure.  *Id.*, ¶26.  CenturyLink acknowledged that personally identifiable information had been made publicly available.  *Id.*, *Exh. A*.

**B.     Jantos' Subscription with DirecTV.**

**1.     The 2007 Customer Agreement.**

Jantos ordered DirecTV through CenturyLink on October 30, 2008. Jantos Decl., ¶¶2-3  The equipment necessary to access the service was installed on his home on November 13, 2008.  Dkt. No. 23, ¶7.  Prior to the installation of the equipment, Jantos did not see, or receive, a copy of any "Customer Agreement" such as DirecTV's April 24, 2007 Customer Agreement ("2007 CA").  Dkt. No. 23, ¶¶7-8.  It was not until *after* his service was activated – or sometime after November 13, 2008 – that DirecTV asserts he would have received the 2007 CA.  Dkt. No. 23, ¶8.  (Jantos, for his part, has no recollection of receiving or reading the 2007 CA.  Jantos Decl., ¶3.)  Although the 2007 CA stated that Jantos had the right to cancel if he did not agree with its terms, cancellation would have resulted in the immediate imposition of hundreds of dollars in fees and penalties, including a $100 "Account Activation Fee", an "Early Termination Fee", a "deactivation fee," and retention of charges for any partial month of unused services.  Dkt. No. 23-1, Sections 4, 2(c)(1) ($100 fee), 5 (listing fees, including early cancellation fee, loss of remainder of month's service), 2(c)(9) (deactivation fee); Dkt. No. 23-3 (DirecTV charges a consumer of up to $360 for standard receivers and up to $480 for advanced products/receivers if services are cancelled prior to the term of the agreement).

RESPONSE TO DIRECTV'S MOTION – 3
[Case No. 2:18-cv-00413-TSZ]

**2.      The 2014 Customer Agreement.**

DirecTV apparently revised the CA in 2014 ("2014 CA"), although Jantos has no recollection of receiving or reading it. Dkt. No. 23, ¶14; Jantos Decl., ¶4. Like the 2007 CA, it purported to permit cancellation.  Dkt. No. 23-4.  Also like 2007 CA, cancelling would have exposed Jantos to the same fees and penalties as existed under the 2007 CA: "If you do not accept these terms, please notify us immediately and we will cancel your order or service *subject to applicable cancellation terms and/or fees (Section 5)*."  *Id.* (emphasis added).  *See also id.*, Section 2(c)(1), 2(c)(9), 5; Dkt. 23-3.

**3.      The 2018 Customer Agreement.**

DirecTV apparently revised the Customer Agreement again in 2018 ("2018 CA"). Dkt. No. 23, ¶17.  It claims that this 2018 CA was "emailed and/or mailed" to customers like Jantos.  *Id.*  Jantos, however, has no recollection of receiving either an email or letter from DirecTV enclosing the 2018 CA.  Jantos Decl., ¶5.  Jantos (who has retained his emails from 2018) has, in fact, searched his 2018 emails in an effort to find any evidence of notice of the 2018 CA, and has found none.  Jantos Dec., ¶6.

It is possible that DirecTV might have emailed the notice to a discontinued email account.  Jantos Decl., ¶7, *Exh. A*.  DirecTV had previously used Jantos' CenturyLink email account and domain, "jjantos@qwest.net," to send material to him.  *See* Dkt. No. 23-5, p. 2 ("This email was sent to jjantos@qwest.net.").  But in June of 2017 CenturyLink terminated the domain and email address.  Jantos Decl., *Exh. A* (Notice from CenturyLink: "Your Qwest.net email address(es) will be deleted on or after June 1, 2017.").  As a result, Jantos would not have received any email from DirecTV after June of 2017 that was addressed to jjantos@qwest.net.  Jantos Decl., ¶7.

### III.   ARGUMENT

**A.   Standards for Evaluating the Enforceability of Arbitration Clauses.**

**1.   The Federal Policy Favoring Arbitration Does Not Apply to the Question of Whether a Party Has Agreed to Arbitrate.**

Despite a strong federal policy in favor of arbitration, arbitration is a "matter of contract," and no party may be required to submit to arbitration "any dispute which he [or she] has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S. Ct. 588 (2002) (*quoting United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582, 80 S. Ct. 1347 (1960); *see also Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S. Ct. 1248 (1989) ("[T]he FAA does not require parties to arbitrate when they have not agreed to do so….").

In deciding whether arbitration should be compelled, a court undertakes a two-step process of "determining (1) whether a valid agreement to arbitrate exists, and if it does; (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostics Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). A party, however, cannot be ordered to arbitration "and deprived of a day in court" unless there is "an express, unequivocal agreement to that effect." *Samson v. NAMA Holdings, LLC*, 637 F.3d 915, 923, 2009 U.S. Dist. LEXIS 130663 (9th Cir. 2010) (*quoting Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980)).

As a result, the liberal policy favoring arbitration does not apply to the threshold question of whether a party is required to arbitrate:

> The question here is not whether a particular issue is arbitrable, but whether a particular *party* is bound by the arbitration agreement. Under these circumstances, the liberal federal policy regarding the scope of arbitrable issues is inapposite.

*Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006) (emphasis in original). *See also Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013) (same). Instead,

courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920 (1995).

### 2. The Question of Whether a Contract Term is Illusory or Unconscionable is a "Gateway Dispute" that is Not Preempted by the FAA, and is Governed by State Law.

The FAA provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, ***save upon such grounds as exist at law or in equity for the revocation of any contract***." 9 U.S.C. § 2 (emphasis added). Under this savings clause, a party opposing arbitration may raise any generally applicable contract defense:

> This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 131 S. Ct. 1740, 1746 (2011) (citations omitted).

The contract defense of unconscionability applies equally to all contracts. Because it does not single out arbitration clauses, it is saved from pre-emption under the FAA. *See Concepcion*, 563 U.S. at 339; *Coneff v. AT&T Corp.*, 673 F.3d 1155, 1161 (9th Cir. 2012) (noting unconscionability's "continued vitality" after *Concepcion*). Unconscionability under state law "is a 'gateway dispute' that courts must resolve because a party cannot be required to fulfill a bargain that should be voided." *Hill v. Garda CL Nw., Inc.*, 179 Wn.2d 47, 54, 308 P.3d 635 (2013).

Washington recognizes two forms of unconscionability: (1) substantive unconscionability, involving "those cases where a clause or term in the contract is alleged to be one-sided or overly harsh"; and (2) procedural unconscionability, relating "to impropriety during the process of forming a contract." *Nelson v. McGoldrick*, 127

RESPONSE TO DIRECTV'S MOTION – 6
[Case No. 2:18-cv-00413-TSZ]

Wn.2d 124, 131, 896 P.2d 1258 (1995) (*quoting Schroeder v. Fageol Motors, Inc.*, 86 Wn.2d 256, 259-60, 544 P.2d 20 (1975)).   Under Washington law, "[e]ither substantive or procedural unconscionability is enough" to void a contract term.  *Hill,* 179 Wn.2d at 55; *Gorden v. Lloyd Ward & Assocs.*, 180 Wn. App. 522, 563, 323 P.3d 1074, 1079 (2014) ("In Washington, either substantive or procedural unconscionability is sufficient to void a contract, and if either is found, our analysis is done.").   Whether an agreement is unconscionable is a question of law for the Court.  *Nelson*, 127 Wn.2d at 131.

**B.     The Arbitration Clauses Are Unenforceable.**

DirecTV identifies three Customer Agreements in existence through Jantos' subscription term: the 2007 CA, the 2014 CA and the 2018 CA.  DirecTV also refers to several Equipment Lease Addendums ("ELA"), *see* Dkt. Nos. 23-3, 23-6, but those agreements do not contain all of the terms and conditions relating to arbitration.  Rather, they each incorporate the CAs.  *See e.g.* Dkt. No. 23-3 (ELA "must be read together with the DirecTV Customer Agreement for all of the terms and conditions…."); Dkt. No. 23-6 ("The Customer Agreement, together with the ELA, comprise the terms of your service agreement with DIRECTV.").   The CAs themselves contain the operative terms and conditions.

None of the CAs are enforceable. [2]  *First*, DirecTV cannot establish that Jantos ever received the 2018 CA.  In fact, it appears that the 2018 CA may have been sent to an email

---

[2] All of these agreements are adhesion contracts. Washington examines the following factors to determine whether an agreement is an adhesion contract: "(1) whether the contract is a standard form printed contract, (2) whether it was 'prepared by one party and submitted to the other on a "take it or leave it" basis,' and (3) whether there was 'no true equality of bargaining power' between the parties." *Adler v. Fred Lind Manor*, 153 Wn.2d 331, 347, 103 P.3d 773 (2004) (*quoting Yakima County (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wn.2d 371, 393, 858 P.2d 245 (1993)).  The CAs at issue here fit the bill:  they are standard forms which were prepared by DirecTV without negotiation. Dkt. No. 23, ¶¶5-17. Plaintiff had no bargaining power — there was no process or method to even engage DirecTV in a negotiation over the terms.  *Id.*; *Adler*, 153 Wn.2d at 348 (there was "no true equality of bargaining power" when the party was not "free to negotiate the terms" of the agreement).

RESPONSE TO DIRECTV'S MOTION – 7
[Case No. 2:18-cv-00413-TSZ]

address that CenturyLink discontinued in 2017.  *Second*, the 2007 CA and 2014 CA are both void because they exculpate DirecTV from liability for any violations of federal law, such as the statute at issue here, and limit Jantos to only remedies under state law. As a result, both CAs violate the federal doctrine of effective vindication and state law doctrine of unconscionability.  *Third*, all three CAs are unconscionable under Washington law because they purport to exact a penalty if a customer does not accept a change in terms, violating the requirement a customer have a meaningful choice as to whether to accept or reject new terms.  *Adler v. Fred Lind Manor*, 153 Wn.2d 331, 345, 103 P.3d 773 (2004).

### 1.   DirecTV Cannot Establish that Jantos Received the 2018 CA.

Jantos never saw any notice of the 2018 CA.  Jantos Decl., ¶5.  Without specifying the method of alleged delivery to Jantos, DirecTV generally alleges that this CA would have been "emailed and/or mailed to all DIRECTV customers at least 30 days prior to the date the Residential Customer Agreement was to take effect…"  Dkt. No. 23, ¶17. DirecTV cannot establish that Jantos received notice in either manner.

#### a.   If DirecTV Used Email to Provide Notice, then it Likely Used an Email Address that CenturyLink Discontinued in 2017.

Jantos has retained all of this emails from 2018.  Jantos Decl., ¶6.  A search of those emails failed to turn up any email notice of the 2018 CA.  *Id*.  DirecTV, for its part, fails to provide any evidence from an individual who actually oversaw the emailing of notices.  It also fails to state the context of the notice.[3]  It also fails to establish exactly

---

[3] Context is, of course, important.  Was the entire text of the 2018 CA contained in the email, or could it only be accessed in a link?  If the entire text of the CA was not set forth in the email, was there any indication that the arbitration provision had been changed? Was other material included in the email so that a person would need to search for the change in terms? A declaration that states, in a conclusory fashion, that all customers got notice without attaching what was actually sent does not begin to answer these questions.

RESPONSE TO DIRECTV'S MOTION – 8
[Case No. 2:18-cv-00413-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

what email address it used with respect to Jantos. As a threshold evidentiary matter, a declaration detailing a business custom or practice alone is insufficient to prove that notice was actually provided. *Lowden v. T-Mobile, USA, Inc.*, 2006 U.S. Dist. LEXIS 94861, *10-11 (W.D. Wash., April 13, 2006). Proof requires a showing of both "(1) an office custom with respect to mailing, ***and*** (2) compliance with the custom in the specific instance." *Lowden*, 2006 U.S. Dist. LEXIS 94861, *10 (*quoting Matsko v. Dally,* 49 Wn.2d 370, 376-77, 301 P.2d 1074 (1956)) (emphasis added). A declaration that states, in effect, "we emailed and/or mailed the notice to all customers" does not come close to meeting this test. *See Lowden*, 2006 U.S. Dist. LEXIS 94861, *10-10; *Kaiser Aluminum & Chem. Corp. v. Dep't of Labor & Indus.*, 57 Wn. App. 886, 890, 790 P.2d 1254 (1990); *Matsko,* 49 Wn.2d at 377 ("Appellant has established an office custom but has failed to establish compliance therewith in the specific instance.").

This level of proof is particularly important here because DirecTV may have sent the notice to an email account that had been deactivated by CenturyLink in 2017. Jantos Decl., ¶7. Prior emails from DirecTV to Jantos indicate that it had been using jjantos@qwest.net to send material to him. *See* Dkt. No. 23-5, p. 2 ("This email was sent to jjantos@qwest.net."). In June of 2017, however, CenturyLink terminated the "@qwest.net" domain and email address. Jantos Decl., ¶7, *Exh. A* (Notice from CenturyLink: "Your Qwest.net email address(es) will be deleted on or after June 1, 2017."). Jantos would not have received any email from DirecTV after June of 2017 that was addressed to jjantos@qwest.net. Jantos Decl., ¶7. DirecTV has no competent evidence that Jantos ever received an email with the 2018 CA.

### b.    *DirecTV Fails to Prove Receipt by United States Mail.*

Jantos, who was actively in litigation with CenturyLink and on the verge of filing the present case against DirecTV, never saw the 2018 CA in the mail. Jantos Decl., ¶5.

DirecTV, in fact, does not declare that any notice was actually mailed to Jantos.[4]  It only suggests that if it did not email notice to Jantos, then it mailed notice.  Dkt. No. 23, ¶17.  But, as noted above, DirecTV may have just emailed the notice to an email account that CenturyLink discontinued in 2017.  On its face, the DirecTV's declaration is insufficient to prove that notice was ever mailed to Jantos.

Even if DirecTV had stated that it typically mails CAs – a statement that it has not made - this type of representation, even in a declaration, is insufficient to establish proof of mailing and receipt.  *Lowden*, 2006 U.S. Dist. LEXIS 94861, *10.  It would also be required to proof that in this specific case it followed those procedures.  *Id*.  No such evidence exists here.

**2.     The Limitation of Remedies Clause in the Both the 2007 CA and the 2014 CA Arbitration Agreement Render the Arbitration Clause Unenforceable.**

The arbitration clauses in DirecTV's 2007 CA and 2014 CA are unenforceable because they eliminate all federal remedies for consumers, such as the federal statute at issue here.  Under both the CAs, consumers are limited to seeking remedies "available to you pursuant to your state's law:"

> You may, in arbitration, seek any and all remedies otherwise available to you ***pursuant to your state's law***.

Dkt. No. 23-1, *Exh. A*, Section 9(b) ("Formal Resolution"), *Exh. D*, Section 9(b) (emphasis added).

---

[4]  Again, DirecTV fails to provide any context for this alleged mailing.  Was the full text of the notice set out in a letter, or was just a link provided to access the 2018 CA?  Did the letter alert the recipient to changes in the arbitration clause?  Did the letter reference the fees that DirecTV would impose if the CA was rejected?  *See* Section III, B, 3, *below*.  Was the notice provided in connection with bills or other marketing material?

RESPONSE TO DIRECTV'S MOTION – 10
[Case No. 2:18-cv-00413-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

DirecTV, by this language, limits the remedies available to a consumer to what is available under state, not federal, law. Basic rules of construction mandate this conclusion. *First*, the phrase "your state's" directly modifies and limits the scope of the word "law." This limiting language has meaning. If DirecTV wanted to give consumers the right to seek both state and federal remedies, then consumers would be permitted to "seek any and all remedies otherwise available to you pursuant to law." Richard A. Lord, WILLISTON ON CONTRACTS, § 32:5 (4th ed. 2010) ("To the extent possible … every word, phrase or term of a contract must be given effect."). DirecTV made a conscious decision to limit the remedies available to consumers to just those available pursuant to state law, exculpating itself from any violation arising from federal law.

*Second*, under the principle of *expressio unius est exclusio alterius*, the use of the phrase "your state's law" necessarily excludes all other laws. *Barnes v. Indep. Auto. Dealers Ass'n Health & Benefit Plan*, 64 F.3d 1389, 1393 (9th Cir. 1995); *Aspon v. Loomis*, 62 Wn. App. 818, 826, 816 P.2d 751, 755 (1991); *Rosenthal-Zuckerman v. Epstein, Becker & Green Long Term Disability Plan*, 39 F. Supp. 3d 1103, 1107 (C.D. Cal. 2014) ("This rule of contract interpretation states that 'to express or include one thing implies the exclusion of the other, or of the alternative.'") (*quoting* Black's Law Dictionary (9th ed. 2009)). No other provision of the arbitration agreement purports to grant consumers any right to seek remedies under federal law.

As applied here, this arbitration provision precludes Jantos from obtaining any relief in arbitration. Jantos' only cause of action arises under Section 338(i)(4)(A) of the Communications Act. *See* 47 U.S.C. § 338(i)(4)(A). A remedy for a violation of this section can *only* be obtained under federal law, and then only in federal court:

> Any person aggrieved by any act of a satellite carrier in violation of this section may bring a civil action *in a United States district court. The court may award—* ….

RESPONSE TO DIRECTV'S MOTION – 11
[Case No. 2:18-cv-00413-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

47 U.S.C. § 338(i)(7).  State courts have no jurisdiction to grant a remedy under 47 U.S.C. § 338(i)(7) for a violation of 47 U.S.C. § 338(i)(4)(A).  *Compare* 47 U.S.C. §§ 206, 207 (no federal jurisdiction[5]) *with* 47 U.S.C. § 338(i)(7) (action must be brought "in a United States district court.").  Federal law, not state law, is the sole source of the remedy.  Because Jantos is not seeking a remedy "otherwise available to [him] pursuant to your state's law," an arbitrator could not grant relief for violations of this exclusive federal law violation.  *See, e.g., Frederick Meiswinkel, Inc. v. Laborer's Union Local 261*, 744 F.2d 1374, 1377 (9th Cir. 1984) ("The contractual language forbade the arbitrator to decide this dispute. Since 'the arbitrator's authority is circumscribed by the arbitration agreement, and he can bind the parties only on those issues that they have agreed to submit to him'…").

DirecTV's attempt to eliminate Jantos' remedies under 47 U.S.C. § 338 violates both federal and state law:  The federal doctrine of effective vindication precludes enforcement of the clause, as does Washington state law's doctrine of unconscionability.  Each are addressed below.

### a.   DirecTV's Attempt to Exculpate Itself from Violations of Federal Law Renders the 2007 CA and 2014 CA Arbitration Clauses Void Under the Federal Doctrine of Effective Vindication.

Where Congress explicitly grants a right to seek remedies for violations of a federal statute, any attempt to eliminate it will invalidate the clause:

> The "effective vindication" exception [to the FAA] … expresse[s] a willingness to invalidate, on "public policy" grounds, arbitration agreements that "operat[e] … as a prospective waiver of a party's *right to pursue* statutory remedies."

---

[5] *Global Naps, Inc. v. Bell Atlantic-New Jersey, Inc.*, 287 F. Supp. 2d 532 (D. N.J. 2003) ("[T]his Court also concludes that §§ 206 and 207 do not vest district courts with jurisdiction over violations of the 1996 Act.")

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

*Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 235, 133 S. Ct. 2304, 2310 (2013) (*quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637, n. 19, 105 S. Ct. 3346 (1985)) (emphasis in original). The exception "finds its origin in the desire to prevent 'prospective waiver of a party's *right to pursue* statutory remedies.'" *Id.* (*quoting Mitsubishi Motors*, 473 U.S. at 637, n. 19) (emphasis in original).   As the Supreme Court noted, "[t]hat would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights."  *Id.* at 236.  *See also Ting v. AT&T*, 319 F.3d 1126, 1151 (9th Cir. 2003) ("[P]arties that agree to arbitrate statutory claims still are entitled to basic procedural and remedial protections so that they can effectively realize their statutory rights."); *Graham Oil Co. v. ARCO Prods.*, 43 F.3d 1244, 1247-48 (9th Cir. 1994).

In *Graham Oil*, for example, an arbitration clause drafted by defendant ARCO "purport[ed] to forfeit certain important statutorily-mandated rights or benefits afforded" to the plaintiff and other franchisees under the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. § 2801, *et seq.*  *Id.* at 1247.   Specifically, it required a waiver of exemplary damages, limited the ability to seek attorney fees, and reduced the statute of limitations from one year to 90 days.  *Id.* at 1248-49.   The Ninth Circuit invalided the arbitration provision because these provisions sought to undermine Congress' decision to grant remedies under the PMPA:

> Our decision to strike the entire the clause rests in part upon the fact that the offensive provisions clearly represent an attempt by ARCO to achieve through arbitration what Congress has expressly forbidden. Congress enacted the PMPA precisely to prevent the type of agreement that ARCO included in the arbitration clause of its franchise contract. ARCO attempted to use an arbitration clause to achieve its unlawful ends. Such a blatant misuse of the arbitration procedure serves to taint the entire clause. As a leading treatise notes, severance is inappropriate when the entire clause represents an "integrated scheme to contravene public policy." *See* E. Allan Farnsworth, *Farnsworth on Contracts* § 5.8,

at 70 (1990). For the above reasons, we conclude that the entire arbitration clause, and not merely the offensive provisions, must be stricken from the contract. We remand to the district court, which is the proper forum for the resolution of this underlying dispute.

*Id.* at 1249.  In this case DirecTV has not just imposed restrictions on claims under 47 U.S.C. § 338, it has eliminated the ability to seek ***any*** relief for violations of ***any*** federal law.  Dkt. No. 23-1, *Exh. A*, Section 9(b), *Exh. D*, Section 9(b).  It is illegal and unenforceable.  *See Am. Exp. Co.*, 570 U.S. at 236.

> **b.** **The Purported Elimination of Jantos' Right to Seek a Remedy Under 47 U.S.C. § 338 Also Renders the 2007 CA and 2014 CA Arbitration Clauses Unconscionable and Non-Mutual Under Washington State Law.**

Under Washington law, a contract is unconscionable if it limits damages that would otherwise be allowed by statute.  *Hill v. Garda CL Nw., Inc.*, 179 Wn.2d 47, 55-56, 308 P.2d 635 (2013).  In *Hill*, the Washington State Supreme Court held that an arbitration clause that purported to limit statutory back-pay damages was unconscionable because it was "one-sided in that it unfairly favors [defendant] by significantly curbing what an employee could recover against [it] compared to what the employee could recover under a statutory wage and hour claim."  *Id.* at 56.[6]  Likewise, in another post-*Concepcion*

---

[6] The Ninth Circuit reached the same conclusion in finding an arbitration provision unconscionable under California law:

> The Circuit City arbitration agreement delimits what relief is available to employees who succeed in arbitration claims against Circuit City. The agreement grants the arbitrator the discretion to award (1) injunctive relief, including reinstatement; (2) one year of full or partial back pay, subject to reductions by interim earnings or public or private benefits received; (3) two years of front pay; (4) compensatory damages in accordance with applicable law; and (5) punitive damages up to $5000 or the equivalent of a claimant's monetary award (back pay plus front pay), whichever is greater. This provision is identical to the one we held substantively unconscionable in *Adams III*. *See Adams III*, 279 F.3d at 895; *accord Morrison*, 317 F.3d at 670-74. ***Because the remedies limitation improperly proscribes available statutory remedies, we again conclude that it is substantively unconscionable***.

*Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1178-1179 (9th Cir. 2003) (emphasis added).

RESPONSE TO DIRECTV'S MOTION – 14
[Case No. 2:18-cv-00413-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

decision, the Washington Supreme Court held that provisions that made arbitration costly and imposed a 30-day limitation period were unconscionable. *Gandee v. LDL Freedom Enters., Inc.*, 176 Wn.2d 598, 605-607, 293 P.3d 1197 (2013). If a limitation on one type of damages, as in *Hill*, or barriers to effective resolution of a dispute, as in *Gandee*, are unconscionable under Washington law, then certainly a clause that purports to eliminate all federal remedies would be deemed unconscionable as well.

The unconscionability of the provision is even more egregious under Washington law because it is not mutual. While consumers are limited to remedies available under state law, DirecTV reserves for itself the right to go to "any court of competent jurisdiction" against any consumer for a dispute "involving a violation of the Communications Act of 1934, 47 U.S.C. § 605, or the Digital Millennium Copyright Act, 17 U.S.C. § 1201, or the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, or any other statement or law governing theft of service." Dkt. No. 23-1, *Exh. A*, Section 9(d) ("Exceptions"), *Exh. D*, Section 9(b) (same). DirecTV's reservation of federal remedies for itself renders the arbitration clause non-mutual and unconscionable because it "unilaterally and severely limits the remedies of only one side." *Scott*, 160 Wn.2d at 857. *See also Luna v. Household Fin. Corp. Iii*, 236 F. Supp. 2d 1166, 1180 (W.D. Wash. 2002) (provision in arbitration clause that "preserves access to the courts for ancillary or preliminary remedies" only benefits drafter and renders the clause non-mutual and substantively unconscionable under Washington law.); *Perez v. DirecTV Grp. Holdings, LLC*, 251 F. Supp. 3d 1328, 1347-48 (C.D. Cal. 2017) (finding identical provision substantively unconscionable under California law).

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

**3.      DirecTV's Reservation of the Right to Change Terms Is Unconscionable Given that Rejection Would Result in a Financial Penalty.**

DirecTV consumers are not free to accept or reject changes in its arbitration clause without suffering economic penalties.  Under each of the three CAs, a consumer that fails to accept DirecTV's unilateral changes will incur fees and penalties. In addition, a consumer will not be entitled to any credit for a partial month of service if the consumer rejects any new terms.

As the 2014 CA provides in Section 4, "Changes in Contract Terms:"

> We reserve the right to change the terms and conditions on which we offer Service. If we make any such changes, we will send you a copy of your new Customer Agreement containing its effective date. ***You always have the right to cancel your Service, in whole or in part, at any time, and you may do so if you do not accept any such changed terms or conditions. See Sections 5(b), (d) and (e) below.*** If you elect not to cancel your Service after receiving a new Customer Agreement, your continued receipt of Service constitutes acceptance of the changed terms and conditions. ***If you notify us that you do not accept such terms and conditions, then we may cancel your Service as provided in Section 5***, as we cannot offer Service to different customers on different terms, among other reasons.

Dkt. No. 23-4, *Exh. E*, Section 4 (emphasis added).  Section 5, in turn, imposes layers of fees on any termination, even a termination that result from a consumer's rejection of the change in terms.  Dkt. No. 23-4, *Exh. E*, Section 5(b) ("In addition to any deactivation or change of service fees provided in Section 2, if you cancel Service … you may be subject to an early cancellation fee if you agreed to a programming agreement with DirecTV and have failed to maintain the required programming package for the required period of time.  For Services sold only in blocks of one month or multiples of one month, if you cancel such Service, we will credit you only for full months not used."), Section 5(c) ("In

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

addition, we may cancel your Service if you elect not to accept any changed terms described to you, as provided in Section 4. Upon cancellation, you will still be responsible for payment of all outstanding balances accrued through the effective date, which may include the deactivation fee described in Section 2 and/or an early cancellation fee."). These same penalties exist under the 2007 CA. Dkt. No. 23-1, *Exh. A*, Sections 4, 5(b), 5(c). Although the "termination fee" is removed in the 2018 CA, a consumer who rejected the 2018 CA would still be subject to an "Early Termination Fee" and loss of up to a month of services under the 2014 CA.

Jantos would have been subjected to substantial penalties if he rejected DirecTV's 2007 CA. As detailed in the Declaration of Nicole Martin, Jantos could not have received a copy of the 2007 CA until *after* his equipment was installed and activated. Dkt. No. 23, ¶7 (equipment was installed and activated on November 13, 2008), ¶8 (*after* Jantos' services were activated, DirecTV would have emailed or mailed a copy of the 2007 CA).[7] As the DirecTV Equipment Lease Addendum states, a copy of the CA is not actually provided to the consumer at the time the equipment is installed or the service is activated. Dkt. No. 23-3. It is only provided "with your first bill," after activation. *Id.* Waiting to send a CA to a customer until after the equipment is physically attached to the customer's location and after the service is activated appears a problem that infects DirecTV's processes. *Perez v. DirecTV Grp. Holdings, LLC*, 251 F. Supp. 3d 1328, 1338 (C.D. Cal. 2017) (DirecTV "short-circuited" the procedure by "withholding the Customer Agreement at the time the deal was made and the equipment installed" and only

---

[7] The structure of the declaration attempts to create the impression that Jantos received the 2007 CA before his services were activated, but the actual language indicates that this is not the case. Ms. Martin declares that the CA is not provided until after activation of the service, which can only occur after the equipment is installed. She therefore concedes that Jantos would have no reason to see the 2007 CA until after the equipment had been installed on him home and activated. Dkt. No. 23, ¶8.

RESPONSE TO DIRECTV'S MOTION – 17
[Case No. 2:18-cv-00413-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

providing it after activation).  As a result, by the time Jantos received the 2007 CA, equipment was already attached to his home and activated, and if he rejected the CA upon receipt then DirecTV would have (1) kept the $100 "Account Activation Fee" that it charged him, (2) charged him an Early Termination Fee in the hundreds of dollars[8], (3) charged him a deactivation fee, *and* (4) retained any partial month of unused services. Dkt. No. 23-1, Sections 4, 2(c)(1) ($100 fee), Section 5 (listing fees, including early cancellation fee, loss of remainder of month's service), Section 2(c)(9) (deactivation fee). While the Early Termination Fee would have been reduced by the time the 2014 CA was allegedly sent, all of the other fees and penalties would still be assessed under the 2007 CA.  Likewise, rejecting the new terms in the 2018 CA would have subjected Jantos to all the fees and penalties set forth in the 2014 CA.  In short, DirecTV's practice of not providing a copy of the CA *prior to installation and activation of the services* effectively "traps" a consumer into accepting DirecTV's CAs – CAs, which in turn, provide that DirecTV may subsequently alter the terms of arbitration.

Procedural unconscionability exists where a consumer "lacked meaningful choice" in entering the contract.  *Adler*, 153 Wn.2d at 345.  Meaningful choice would exist if Jantos had been provided with a copy of the CA *prior to installation and activation*, *e.g.*, at a time when he could have rejected the terms without paying any penalty.  *See Riensche v. Cingular Wireless LLC*, 2006 U.S. Dist. LEXIS 93747, *23 (W.D. Wash. 2006) (consumer had a meaningful choice because "[h]e had the option to cancel his service without paying an early termination fee, if he decided he did not agree with the terms after receiving his phone and Welcome Kit.").  Yet, DirecTV has made the decision to

---

[8] *See* Dkt. No. 23-3 ("Consequences of Your Failure to Activate Programming or Maintain Your Programming") (providing that DirecTV charge a consumer for liquidated damages "of up to $360 for standard receivers and up to $480 for advanced products/receivers" if services are cancelled prior to the term of the agreement).

RESPONSE TO DIRECTV'S MOTION – 18
[Case No. 2:18-cv-00413-TSZ]

withhold the CA until after a customer has equipment attached to the home and activated.  At that point, the consumer is committed, and financially compelled to accept the CA.  This is not a "meaningful choice" under Washington law.  *Adler v. Fred Lind Manor*, 153 Wn.2d 331, 345, 103 P.2d 773 (2004) (procedural unconscionability is the "lack of meaning choice" derived from the circumstances surrounding the transaction, including "the manner in which the contract was formed"); *see also Perez v. DirecTV Grp. Holdings*, LLC, 251 F. Supp. 3d 1328, 1339-1340, (C.D. Cal. 2017) (court finds "high degree of procedural unconscionability" where, *inter alia*, DirecTV does not provide copy of CA to consumer until after equipment is installed and activated).

**C.     Jantos Has Standing to Pursue Remedies Against DirecTV.**

DirecTV also seeks dismissal for lack of standing, referring to the motion filed by CenturyLink.  Jantos' response is therefore contained in his response to CenturyLink's motion.

### IV.  CONCLUSION

DirecTV's CAs all suffer from fatal flaws.  The 2007 and 2014 CAs attempt to restrict the federal remedies available to Jantos.  They fail therefore under the federal doctrine of effective vindication, as well as being patently unconscionable under Washington law.  The way all CAs are obtained – notice is only provided *after* a consumer is financially trapped by layers of fees for termination – eliminates the meaningful choice required for a valid contract by Washington law.  Finally, DirecTV fails to proffer competent evidence to show that Jantos had notice of the 2018 CA. DirecTV's motion to compel arbitration should be denied.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

DATED: June 11, 2018.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER

*s/ Richard E. Spoonemore*
Chris R. Youtz (WSBA #7786)
Richard E. Spoonemore (WSBA #21833)
  701 Fifth Avenue, Suite 2560
  Seattle, WA 98104
  Tel. (206) 223-0303; Fax (206) 223-0246
  Email:   cyoutz@sylaw.com
           rspoonemore@sylaw.com

—and—

MYERS & COMPANY, PLLC

*s/ Michael David Myers*
Michael David Myers (WSBA #22486)
  1530 Eastlake Avenue East
  Seattle, WA 98102
  Tel. (206) 398-1188; Fax (206) 400-1115
  Email:   mmyers@myers-company.com

Attorneys for Plaintiff

RESPONSE TO DIRECTV'S MOTION – 20
[Case No. 2:18-cv-00413-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

**CERTIFICATE OF SERVICE**

I hereby certify that on June 11, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

- **Amanda J. Beane**
  abeane@perkinscoie.com, docketsea@perkinscoie.com, jhernandez@perkinscoie.com

- **Erin K. Earl**
  EEarl@perkinscoie.com, EWeinkauf@perkinscoie.com, docketSEA@perkinscoie.com

- **Jordann Hallstrom**
  jhallstrom@corrcronin.com, jsteward@williamskastner.com

- **Emily J Harris**
  eharris@corrcronin.com, sdamon@corrcronin.com, reception@corrcronin.com

- **Todd M. Hinnen**
  thinnen@perkinscoie.com, kklemperer@perkinscoie.com, docketsea@perkinscoie.com, nmenaldo@perkinscoie.com, jstarr@perkinscoie.com

- **Michael David Myers**
  mmyers@myers-company.com, tpak@myers-company.com, evarriano@myers-company.com, slin@myers-company.com

- **Jennifer J. Oxley**
  oxley@wtotrial.com, wallace@wtotrial.com

- **Kathryn A. Reilly**
  reilly@wtotrial.com, cljones@wtotrial.com, meyer@wtotrial.com

- **Richard E. Spoonemore**
  rspoonemore@sylaw.com, matt@sylaw.com, rspoonemore@hotmail.com, theresa@sylaw.com

- **Chris Robert Youtz**
  chris@sylaw.com, matt@sylaw.com, theresa@sylaw.com

and I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

- (No manual recipients)

DATED:  June 11, 2018, at Seattle, Washington.

*s/ Richard E. Spoonemore*
Richard E. Spoonemore (WSBA #21833)

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

RESPONSE TO DIRECTV'S MOTION – 21
[Case No. 2:18-cv-00413-TSZ]