Hon. Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMES JANTOS, individually, and on behalf of similarly situated individuals, | NO.  2:18-cv-00413-TSZ |
| Plaintiff, | |
| v. | RESPONSE TO CENTURYLINK'S MOTION TO DISMISS |
| DIRECTV, a Delaware Corporation; DIRECTV, LLC, a California Limited Liability Corporation; and QWEST CORPORATION d/b/a CENTURYLINK QC, a Colorado Corporation, | **Note on Motion Calendar: June 22, 2018** |
| Defendants. | |

**TABLE OF CONTENTS**

I.    INTRODUCTION..................................................................................................1

II.   FACTS ................................................................................................................2

      A.   DirecTV and CenturyLink Jointly Market, Sell and Bill for
           Bundled Services.........................................................................................2

      B.   Jantos Discovers that His Personally Identifiable
           Information was Published Online. .............................................................3

III.  ARGUMENT ......................................................................................................4

      A.   Motion to Dismiss Standards.......................................................................4

      B.   Jantos Has Standing Under Article III. .......................................................5

      C.   Jantos is Aggrieved Under 47 U.S.C. § 338. ............................................13

      D.   Jantos Has Properly Pled that CenturyLink is Subject to
           Liability Under 47 U.S.C. § 338 ...............................................................14

IV.   CONCLUSION ................................................................................................17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

RESPONSE TO CENTURYLINK'S
MOTION TO DISMISS – ii
[Case No. 2:18-cv-00413-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

## I.  INTRODUCTION

Millions of consumers entrust personal information to businesses to obtain goods or services. Congress recognized the need to protect the privacy of that information. and has passed several laws requiring these businesses, including providers of cable and satellite television, to safeguard that information and granting consumers the right to seek redress in federal court when they fail to do so.

In this case, Jantos and other consumers provided personal identifiable information to defendants to obtain satellite television services. As defendants acknowledge, those services fall under the purview of Satellite Home Viewer Extension and Reauthorization Act ("SHVERA"). Similar to other consumer laws, SHVERA has a privacy section that prohibits defendants from allowing access by third parties to a customer's personal information without permission from the customer. Providers are expressly required to "take such actions as are necessary to prevent unauthorized access to such information." SHVERA gives the consumer the right to sue when they fail to comply with that mandate.

In 2017, Jantos discovered that personal identifiable information he provided to defendants, as well as activity in his accounts with defendants, was publicly available on the Internet. He observed this while doing a simple Internet search of a telephone number he had called. That search led him to his billing statement prepared by defendants, which included his name, address, satellite subscriptions, viewing activity, and telephone numbers of people he had spoken with, including his clients. He was also able to access other subscribers' information using his browser's basic internet search application.

CenturyLink cannot escape liability for publicly disseminating the personal information of Jantos and other subscribers in the Internet.  Here, CenturyLink bundled its services with those of DirecTV under various contracts, agreements and arraignments

RESPONSE TO CENTURYLINK'S
MOTION TO DISMISS – 1
[Case No. 2:18-cv-00413-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

is has with DirecTV.  Specifically, it advertised the DirecTV service, signed up Jantos through its webpage, and billed Jantos for the services.  On its webpage CenturyLink announces that it actually provides "DirecTV service through CenturyLink."  *See* www.centurylink.com/home/tv/ (last visited 6/6/18) (emphasis added).  As the legislative history explains, Congress expanded the definition of covered entities to capture affiliated entities, or entities that worked together to provide the service to the consumer.  Any other definition would permit a breaching defendant to potentially escape liability.  102 H. Rpt. 628, p. 83 (June 29, 1992) (legislative history for parallel and identical statute applied to cable operations) ("This expanded definition was included to ensure that affiliated entities of the cable operator were included so that such entities could not avoid the privacy provisions merely because they were not directly offering cable service.  . . . The Committee finds that such subsidiary or entity offering wire or radio communications services should adhere to the privacy provisions embodied in the Act and thus 'cable operator' was defined for the purposes of this section of the Act to include any such person affiliated with the cable operator.").

## II.  FACTS

**A.    DirecTV and CenturyLink Jointly Market, Sell and Bill for Bundled Services.**

CenturyLink and DirecTV have entered into an arrangement to bundle telephone services with satellite television services.  Dkt. No. 1, ¶5.  This is not just a casual business arrangement, but a weaving of their respective services into a single product.  Specifically, they have contracted with each other to jointly market, sell and bill for bundled services.  *Id.  See also,* Declaration of James Jantos, ¶¶2-3.

CenturyLink and DirecTV work hand-in-glove at all stages.  *See e.g.* Dkt. No. 1, ¶5.  Consumers are targeted with advertisements highlighting the linkage between DirecTV and CenturyLink.  *See* www.centurylink.com/home/tv/ (last visited 6/6/18) ("DIRECTV and CenturyLink. Better Together.").  This service is advertised, on

RESPONSE TO CENTURYLINK'S
MOTION TO DISMISS – 2
[Case No. 2:18-cv-00413-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

CenturyLink's own webpage, as "**DirecTV service through CenturyLink**."  *Id.* (emphasis added).  CenturyLink is essentially reselling DirecTV's services directly to customers.  *See* Amason, Bernie, TELECOMPETITOR, 8/3/10 (available at http://www.telecompetitor.com/centurylinkdumps-dish-launches-directv%e2%80%93-what-about-iptv/) (last visited 6/11/18) (discussing CenturyLink's resale of DirecTV services).  That is how Jantos obtained DirecTV – he did not interact at all with DirecTV when he ordered the service.  All of the sign-up was done through CenturyLink.  Jantos Decl., ¶2.

Once a person signs up for the bundled service, a satellite dish is installed on a consumer's home.  That dish is then used by both CenturyLink and DirecTV to jointly deliver services.  *See* https://www.centurylink_quote.com/faq ("Q Does CenturyLink Use a Satellite Dish? A When you bundle CenturyLink with DIRECTV, it uses a satellite dish.") (last visited 6/6/18).

Finally, CenturyLink and DirecTV jointly bill for the bundled services. Dkt. No. 1, ¶¶1, 4.  Specifically, CenturyLink bills customers for both its services and the DirecTV services that it resells.  *Id.*, ¶5, 20.  *See also* http://www.centurylink.com/home/help/account/billing/manage-one-bill-instead-of-two-when-you-have-directv.html (last visited 6/6/18).

**B.    Jantos Discovers that His Personally Identifiable Information was Published Online.**

Jantos discovered in 2017 that his name, address, telephone number, telephone numbers of individuals he had called, and DirecTV bill, among other data, was publicly available on the internet.  Dkt. No. 1, ¶¶8, 21, 22.  Distressed at this discovery, Jantos immediately took steps to discover why his personal information was showing up after he conducted a simple web search for a telephone number.  Dkt. No. 1, ¶8.  He contacted a colleague to see whether he could replicate the search, or whether his personal

information was only showing up on his computer.  Dkt. No. 1, ¶8.  The colleague, conducting a similar search, was able to discover all of Jantos' information.  Dkt. No. 1, ¶24.  As part of his investigation, Jantos also discovered that he could easily access the personally identifiable information of other subscribers of CenturyLink/DirecTV.  Dkt. No. 1, ¶23.  Distressed with the disclosure, Jantos retained counsel who altered CenturyLink to the public disclosure.  Dkt. No. 1, ¶26.  CenturyLink, in response, sent a letter to Jantos and other subscribers acknowledging that personally identifiable information had, in fact, been made available on the internet:

> Recently, we learned that your bill or some of your bills could be viewed online if someone discovered and clicked on a specific, unique URL initially created to allow you to view your bill online though the MyAccount portal.  While we have not been able to determine if your bill(s) was in fact viewed by anyone other than you, a bill would contain your name, billing address, and other account information such as account number, services received, and amount owed.

Dkt. No. 1-1.

### III.   ARGUMENT

**A.      Motion to Dismiss Standards**

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78, 129 S. Ct. 1937 (2009.  This standard does not require "detailed factual allegation[s]."  *Id*. at 768 (*quoting Bell Atl., Corp., v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007)).  Rather, it requires sufficient detail to rise above mere "labels and conclusions" or "a formulaic recitation of the element of a cause of action."  *Id*.  As a result, to survive a motion to dismiss a complaint need only contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.  *Id.*

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

at 677-78.   A claim is facially plausible where facts sufficient to draw a reasonable inference the defendant is liable are pled in the complaint.  *Id*. at 678.

Federal courts may only hear cases authorized by the Constitution or a statutory grant. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). The burden of establishing subject-matter jurisdiction rests upon the party seeking to invoke federal jurisdiction. *Id.*

A party may bring a factual challenge to subject-matter jurisdiction, and in such cases the court may consider materials beyond the complaint. *PW Arms, Inc. v. United States,* 186 F. Supp. 3d 1137, 1142 (W.D. Wa. 2016) (citing *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003); *see also McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) ("Moreover, when considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction.").

**B.    Jantos Has Standing Under Article III.**

**1.    Jantos has standing under *Spokeo*.**

To satisfy Article III standing, "the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 635 (2016). CenturyLink argues Jantos cannot show he has standing to bring his claims because he cannot satisfy the first of those requirements.

The complaint alleges that defendants violated the "Privacy rights of satellite subscribers" section of SHVERA:

> Except as provided in subparagraph (B), a satellite carrier shall not disclose personally identifiable information concerning any subscriber without the prior written or

RESPONSE TO CENTURYLINK'S
MOTION TO DISMISS – 5
[Case No. 2:18-cv-00413-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

electronic consent of the subscriber concerned and shall take such actions as are necessary to prevent unauthorized access to such information by a person other than the subscriber or satellite carrier.

47 U.S.C. § 338(i)(4)(A). The defendants violated this section by posting Jantos's personally identifiable information. They thus failed to take necessary action to prevent unauthorized users from accessing personally identifiable information from Jantos and other customers. As a result, the name, address, email, telephone number, and other personal information for their customers was posted on the Internet available for viewing by anyone with a computer. Defendants also revealed activity in customer accounts, including telephone numbers called and entertainment purchased by customers. The Act allows customers aggrieved by these violations to sue for actual or liquidated damages and punitive damages.

CenturyLink contends, however, that Jantos cannot pursue a claim for these violations unless he additionally alleges that his information was actually viewed and used by third parties to make illegal purchases or cause other hardship. It also asserts Jantos "cannot satisfy the demands of Article III by merely alleging a statutory violation." CenturyLink motion at 4. CenturyLink is wrong.

First, CenturyLink's contention that a violation under the Act is actionable only where it causes a familiar tangible injury, such as unauthorized credit card charges, is incorrect. The injury need not be tangible; "an intangible harm may qualify as an injury in fact." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 982 (9th Cir. 2017) (*citing Spokeo* 136 S. Ct. at 1549, noting the Supreme Court had "confirmed in many of our previous cases that intangible injuries can nevertheless be concrete").

Second, "The actual or threatened injury required by Article III may exist solely by virtue of statutes creating legal rights, the invasion of which create standing." *In re Horizon Healthcare Services Data Breach Litigation*, 846 F. 3d 625, 635 (3d Cir. 2017) (*quoting*

RESPONSE TO CENTURYLINK'S
MOTION TO DISMISS – 6
[Case No. 2:18-cv-00413-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

*Warth v. Seldin*, 422 U.S. 490, 500, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)) (emphasis added). And when a violation of a statute provides the concrete injury for standing, no additional harm need be shown other than the violation of the statute itself. *Eichenberger*, 876 F.3d at 984 (9th Cir. 2017).

Not every legal requirement can be the source of a claim, however. The Supreme Court in *Spokeo* addressed whether a violation of a statutory provision in the Fair Credit Reporting Act conferred standing. It reversed a Ninth Circuit decision because that court did not sufficiently address whether the injury resulting from a statutory breach was sufficiently "concrete" to justify standing.

The Supreme Court in *Spokeo* held that a plaintiff does not obtain standing by alleging a "bare procedural violation." To illustrate, the Court noted that the Fair Credit Reporting Act requires that notice be given when a credit report is being provided to a third party. If the credit report accurately discloses the appropriate information, and the only violation was the failure to send the notice, the subject of the report would not have standing to pursue the claim unless the individual could allege some injury from not receiving the notice. The Court also doubted that providing a report with an "incorrect zip code, without more," could cause concrete harm. The Court remanded the case to the Ninth Circuit to further consider the standing issue with this additional guidance. The Supreme Court also confirmed, however, that injuries don't have to be tangible to be "concrete"; plaintiffs have standing to bring claims with intangible injuries.

On remand, the plaintiff contended that the statutory violation was sufficiently concrete to support standing under *Spokeo*. The plaintiff alleged that Spokeo published an inaccurate report about him on its website, and that it did not "follow reasonable procedures to assure maximum possible accuracy" of the information as required by the FCRA. The Ninth Circuit concluded that this procedure was crafted to protect

RESPONSE TO CENTURYLINK'S
MOTION TO DISMISS – 7
[Case No. 2:18-cv-00413-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

consumers' "concrete interest in accurate credit reporting about themselves." *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1115 (9th Cir. 2017).

The Ninth Circuit held that plaintiff had standing because the "procedural violation" was designed to protect against the harm the statute was enacted to prevent. *Id.* at 1113-14. Put differently, Congress decided that consumers have a concrete right to accurate credit reports. The subject of an inaccurate credit report has standing to sue when a "procedural" provision that was crafted to protect that right—the requirement for "reasonable procedures to assure maximum possible accuracy"—is violated.

The Supreme Court also recognized that there are statutes that are not procedural, but substantive. For those statutes, it is only necessary to allege a violation of the statute without "alleg[ing] any additional harm beyond the one Congress has identified" to establish a concrete injury and standing. *Spokeo*, 136 S. Ct. at 1549. "Plaintiffs' concrete injury is the invasion of the right created by the statute… Plaintiffs need not allege any more than that." *Melito v. Am. Eagle Outfitters, Inc.*, 2017 U.S. Dist. LEXIS 146343, at *14 (S.D.N.Y. 2017).

For example, in *Van Patten v. Vertical Fitness Grp., Ltd. Liab. Co.*, 847 F.3d 1037, 1042-43 (9th Cir. 2017), after a plaintiff signed up for a gym membership, he began receiving unsolicited text messages from the gym. He sued the gym under the Telephone Consumer Protection Act of 1991 ("TCPA"), which prohibits sending automated, unsolicited text messages to consumers. The defendant claimed that the plaintiff lacked standing to bring the claims because he did not establish a concrete injury-in-fact under Spokeo. The Ninth Circuit disagreed. It concluded "that a violation of the TCPA is a concrete, de facto injury." Thus, a "plaintiff alleging a violation under the TCPA "need not allege any additional harm beyond the one Congress has identified." 847 F.3d at 1043. The same is true for the privacy section of SHVERA.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

**2.      Standing was conferred when the SHVERA privacy statute was violated by defendants; no additional harm needs to be alleged**

The Supreme Court in *Spokeo* noted that "because Congress is well-positioned to identify intangible harms that meet minimum Article III requirements, its judgment is… instructive and important." 136 S. Ct. at 1549. Indeed, "Congress may elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Id.* Stated differently, Congress may define when consumers have the right to obtain relief in court.

In 2004 Congress amended the SHVERA to "extend the current privacy rights of cable subscribers to satellite subscribers." *See*, S. Rep. 108-427. It created a section entitled "Privacy rights of satellite subscribers" to "prohibit satellite companies from collecting and disclosing program selection or personally identifiable information on any subscriber without prior consent from the subscriber." *Id.* at 5. The purpose of the new section was to "enhance personal privacy by setting forth requirements for the protection of subscribers' account information." *Id.* at 7.

The enacted law provides satellite subscribers a concrete right to control the disclosure of personal information handled by the providers: "a satellite carrier ***shall not disclose*** personally identifiable information concerning any subscriber ***without the prior written or electronic consent*** of the subscriber concerned…" 47 USC § 338(i)(4)(A) (emphasis added). This is not a procedural requirement of the type analyzed by the *Spokeo* court; this is a substantive right provided to satellite subscribers. It effectuates the intent of Congress in enacting the "Privacy rights of satellite subscribers" section of the amended act. Violating this provision results in a concrete, *de facto* injury redressable under SHVERA.

This nondisclosure provision is like the privacy provision in the Video Privacy Protection Act of 1988 ("VPPA") at issue in *Eichenberger.*, 876 F.3d at 983, which prohibits

RESPONSE TO CENTURYLINK'S
MOTION TO DISMISS – 9
[Case No. 2:18-cv-00413-TSZ]

a video provider from disclosing "personally identifiable information concerning any consumer of such provider." That court recognized the provision like other privacy statutes, "protects against intrusion in an age when consumers 'provide to businesses…personal information without having any control over where that information goes.'" *Id.*, *quoting*, S. Rep. No. 100-599, at 6-7. "That provision does not describe a procedure that video service providers must follow. Rather, it protects generally a consumer's substantive privacy interest in his or her video-viewing history." 876 F.3d at 983.

The Ninth Circuit then held that the plaintiff had standing to sue for any disclosure violating the provision without showing additional harm, also concluding that the *Spokeo* Court's analysis regarding whether a claim could be made for violating one of the many the procedural requirements of FCRA was not applicable:

> Thus, although the FCRA outlines procedural obligations that sometimes protect individual interests, the VPPA identifies a substantive right to privacy that suffers any time a video service provider discloses otherwise private information. As a result, every 18 U.S.C. § 2710(b)(1) violation "present[s] the precise harm and infringe[s] the same privacy interests Congress sought to protect" by enacting the VPPA. *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (so holding with respect to the Telephone Consumer Protection Act of 1991). Accordingly, *Spokeo I* and *Spokeo II* are distinguishable from this VPPA claim, and Plaintiff need not allege any further harm to have standing.

876 F.3d at 983-84. *See also, In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d at 273-74 (3d. Cir. 2015) (plaintiffs had standing to sue to vindicate concrete injury under the Video Privacy Protection Act, specifically, "the unlawful disclosure of legally protected information," as "Congress has long provided plaintiffs with the right to seek redress for unauthorized disclosures of information that, in Congress's judgment, ought to remain private").

RESPONSE TO CENTURYLINK'S
MOTION TO DISMISS – 10
[Case No. 2:18-cv-00413-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

While the judgment of Congress is important in determining whether intangible harm from a statutory violation is a concrete, *de facto* injury, the Supreme Court also explained in *Spokeo* that if the alleged "intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit" it is more likely to represent a concrete injury. 136 S. Ct. at 1549.

Actions to remedy defendants' invasions of privacy have long been heard by American courts, and the right of privacy is recognized by most states. See Restatement (Second) of Torts § 652(B) (Am. Law Inst. 1977). *Van Patten*, 847 F.3d at 1042-43. Indeed, "it has long been the case that an unauthorized dissemination of one's personal information, even without a showing of actual damages, is an invasion of one's privacy that constitutes a concrete injury sufficient to confer standing to sue." *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d. 623, 636 (E.D. Va. 2016) (citing Samuel D. Warren & Louis D. Brandeis, The Right to Privacy [**23] , 4 Harv. L. Rev. 193 (1890)). See, *Eichenberger*, 876 F.3d at 983 ("Violations of the right to privacy have long been actionable at common law.")

In sum, both history and Congress's judgment demonstrate that Jantos's injury from defendants posting of his personal information on the Internet is sufficiently concrete for him to have standing to bring suit under SHVERA.

The cases cited by defendants are inapplicable. In *Bassett v. ABM Parking Servs.*, 883 F.3d 776 (9th Cir. 2018), the plaintiff received a receipt at a parking garage that included the full expiration date of his credit card. That was contrary to the prescriptions of the Fair and Accurate Credit Transactions Act of 2003. He sued for this violation but was denied standing because he could not allege that anyone other than himself had access to the receipt. The court noted the differences between Bassett's case and cases we cite above where the plaintiffs had standing when a statute was violated due to un-consented disclosure of personal information to third parties. If the receipt had been

RESPONSE TO CENTURYLINK'S
MOTION TO DISMISS – 11
[Case No. 2:18-cv-00413-TSZ]

1   posted to the Internet for review by anyone, perhaps the result would have been

2   different.

3       Similarly, in *Padilla v. Dish Network L.L.C.*, 2013 U.S. Dist. LEXIS 101120 (N.D. Ill.

4   2013), the defendant did not make the plaintiff's information available to anyone other

5   than the plaintiff. When the defendant failed to timely destroy the data after the plaintiff

6   canceled his satellite service, the plaintiff filed a claim under SHVERA. The court held

7   generally that damages should not be permitted under the privacy section of the Act

8   when the claim is a failure to destroy data and the information is actually being

9   safeguarded from disclosure. The court also held that the plaintiff could seek an

10  injunction, suggesting that he had standing to seek some relief under the statute. This

11  case predates *Spokeo* and has little precedential value.

12      CenturyLink also cites *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909 (7th Cir.

13  2017), a case alleging that a cable company improperly retained data from a former

14  customer. The customer claimed this failure violated the privacy section of the Cable

15  Communications Policy Act. The court recognized that violations of rights of <u>privacy</u> are

16  actionable, but that there was no indication that the cable company had released, or

17  allowed anyone to disseminate, any of the plaintiff's personal information in the

18  company's possession. Absent any potential disclosure of private information, the court

19  found that the plaintiff lacked standing. This case sheds no light on the appropriate

20  treatment of a claim where a customer's personal information was posted to the Internet

21  for public viewing.

22      In short, these and the other cases cited by CenturyLink involve plaintiffs who

23  conceived a way to claim a violation of a portion of a statute that does not implicate an

24  invasion of their personal privacy or any other concrete injury. The defendants' public

25  disclosure of Jantos's personal information without his consent, however, causes exactly

26  the harm that Congress legislated to prevent. He has standing to pursue those claims.

RESPONSE TO CENTURYLINK'S
MOTION TO DISMISS – 12
[Case No. 2:18-cv-00413-TSZ]

CenturyLink also contends that there is no standing because the prospect of future harm is too speculative, claiming Jantos has not suffered any losses or harm since discovering his personal information was posted on the Internet by the defendants. As the Ninth Circuit stated in its opinion on remand when the defendant in that case made a similar argument:

> Here, by contrast, both the challenged conduct and the attendant injury have already occurred. As alleged in the complaint, *Spokeo* has indeed published a materially inaccurate consumer report about Robins. And, as we have discussed, the alleged intangible injury caused by that inaccurate report has also occurred. We have explained why, in the context of FCRA, this alleged intangible injury is itself sufficiently concrete. It is of no consequence how likely Robins is to suffer additional concrete harm as well (such as the loss of a specific job opportunity)

*Robins v. Spokeo, Inc.*, 867 F.3d at 1118 (9th Cir. 2017). Similarly, Jantos has already suffered the harm addressed by the statute. The statute was violated, and the harm occurred, when the defendants posted his personal information online. He does not have to wait until additional, and possible tangible, damages occur.

**C.      Jantos is Aggrieved Under 47 U.S.C. § 338.**

CenturyLink contends that "for the same reasons plaintiff has failed to plead cognizable harm to satisfy his burden under Article III, he is likewise failed to plausibly allege any actual damages to support his claim for statutory damages." CenturyLink motion at 11. CenturyLink fails to recognize that this is a breach of privacy case, not a theft recovery case where there might be tangible damages. In the cases cited by CenturyLink, not a single one involves an actual breach of privacy worry defendant is accused of disclosing personal information without consent.

RESPONSE TO CENTURYLINK'S
MOTION TO DISMISS – 13
[Case No. 2:18-cv-00413-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

**D.     Jantos Has Properly Pled that CenturyLink is Subject to Liability Under 47 U.S.C. § 338**

Congress, in Section 338 of the Communications Act, 47 U.S.C. § 338, granted specific and robust privacy protections to consumers of satellite services.  Concerned about the potential disclosure of personally identifying information, Section 338 prohibited satellite carriers from disclosing any such information without prior express consent.  47 U.S.C. § 338(i)(4)(A).  In addition, Congress required satellite carriers to affirmatively take such steps as are "necessary to prevent unauthorized access" to personal information of subscribers.   47 U.S.C. § 338(i)(4)(A). Any violation of Section 338 gives rise to a private cause of action in federal court.  47 U.S.C. § 338(i)(7). Any person "aggrieved by any act of a satellite carrier in violation" of Section 338 is entitled to "actual damages, but not less than liquidated damages computed at the rate of $100 a day for each violation or $1,000, whichever is higher" in addition to "punitive damages" and attorneys' fees and costs of suit.  47 U.S.C. § 338(i)(7).

The term "satellite carrier" is generally defined in 17 U.S.C. § 119(d)(6).  Section 338, however, extends the reach of the definition to capture entities and groups that would not otherwise be defined as "satellite carriers":

> (C)  the term "satellite carrier" includes, in addition to persons within the definition of satellite carrier, any person who —
>
> (1) is owned or controlled by, or under common ownership or control with, a satellite carrier; and
>
> (2) provides any wire or radio communications service.

47 U.S.C. § 338(i)(2)(C).[1]

---

[1] CenturyLink does not dispute, as plaintiff specifically pled, that it "provides any wire or radio communications service." Dkt. No. 1, ¶4; Dkt. No. 21, p. 13, n. 4. Nor can it – it provides internet and phone service to Jantos, *see* Dkt. No. 1, ¶1, which falls squarely within the definition of wire communications. 47 U.S.C. § 153(59).

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

This language tracks, essentially word for word, the expansion of the definition of "cable operator" in a parallel statute that provides the same privacy protections to cable customers.  *See* 47 U.S.C. § 551(a)(2)(C). The expansion of the definitions was a deliberate and conscious choice.  Congress was concerned that a cable operator or satellite carrier would affiliate with another entity to provide services who would not fall under the traditional and technical definitions of the terms "cable operator" or "satellite carrier."  This would allow the privacy protections to be circumvented by both the carrier and the affiliate. As the legislative history explains, the specific intent of the definitional expansion was to capture other entities that were affiliated with the operator to ensure that consumers were protected:

> The term "cable operator" is defined so as to include, in addition to those persons within the definition of cable operator in section 602 of the Communications Act, any person who is owned or controlled by or under common ownership or control with, a cable operator, and provides any wire or radio communications service. ***This expanded definition was included to ensure that affiliated entities of the cable operator were included so that such entities could not avoid the privacy provisions merely because they were not directly offering cable service***. For example, a cable operator could set up a separate subsidiary to offer radio communications service, or a cable operator could be a subsidiary of, ***or affiliated with***, an entity offering wire or radio communications services. ***The Committee finds that such*** subsidiary or ***entity offering wire or radio communications services should adhere to the privacy provisions embodied in the Act and thus "cable operator" was defined for the purposes of this section of the Act to include any such person affiliated with the cable operator***.

102 H. Rpt. 628, p. 83 (June 29, 1992) (emphasis added).

That is exactly what happened here.  CenturyLink, through "contracts, agreements and arraignments," *see* Dkt. No. 1, ¶5, has affiliated itself with DirecTV to provide satellite services to consumers, such as Jantos.  Dkt. No. 1, ¶¶4, 5. CenturyLink

Sirianni Youtz
Spoonemore Hamburger
701 Fifth Avenue, Suite 2560
Seattle, Washington 98104
Tel. (206) 223-0303   Fax (206) 223-0246

offers satellite services by bundling its services with DirecTV.  Dkt. No. 1, ¶¶4, 5.  It then advertises those bundled services, uses the satellite dish for the provision of both services, and bills consumers directly for both services.  *See generally*, Section II, A, *above*. As it represents to consumers, it provides "DirecTV service through CenturyLink." Jantos, in fact, did not interact with DirecTV at all when he signed up for the service – he only worked with CenturyLink.   Jantos Decl., ¶2.   In addition, CenturyLink was specifically working under common control with DirecTV for purposes of billing, the very activity that would lead to the prohibited disclosure of personal information at issue here.  Dkt. No. 1, ¶¶4, 5 ("CenturyLink is also an agent for DirecTV and/or DirecTV, LLC for purposes of all tasks associated with billing certain bundled services provided by DirecTV and/or DirecTV, LLC, to its subscribers.").

CenturyLink, citing accounting regulations and a case concerning customs rules, argues that the phrase "common control" should be narrowly construed to mean only related entities, such as a parent and subsidiary.  Dkt. No. 21, pp. 12-13.  The legislative history, however, indicates that Congress intended a far broader meaning.  *See* 102 H. Rpt. 628 (discussion is not limited to subsidiaries, but also includes entities that are "affiliated with" the operator).  This is consistent with the purpose of the statute itself – the protection of private information. CenturyLink is functionally offering DirecTV satellite services to Jantos and other consumers and, as the legislative history notes, "such … entity offering wire or radio communications services should adhere to the privacy provisions embodied in the Act and thus 'cable operator' was defined for the purposes of this section of the Act to include any such person affiliated with the cable operator."  102 H. Rpt. 628, p. 83.  In this regard the term "common control" is no different than other protective statutes.  For example, the regulations applicable to determining whether retailers of services fall under the Fair Labor Standards Act find "common control" where "the performance of the described activities are controlled by

RESPONSE TO CENTURYLINK'S
MOTION TO DISMISS – 16
[Case No. 2:18-cv-00413-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

one person or by a number of persons, corporations, or other organizational units acting together."  29 C.F.R. § 779.221.  Joint ownership is not required.  29 C.F.R. § 779.224. Rather, if there is an agreement or arrangement between the parties to shift control of an activity from one entity to another, then common control exists: "In other cases, the power to control may be reserved through agreement or arrangement between the parties so as to vest the control of the activities of one business in the hands of another." 29 C.F.R. § 779.224.  This is exactly what is alleged, and must be assume true, here.  Dkt. No. 1, ¶¶4, 5.

## IV.  CONCLUSION

CenturyLink's motion to dismiss should be denied.  Jantos has standing to assert his rights under 47 U.S.C. § 338, a statute that Congress designed to provide regress for invasions of privacy rights even when actual damages might prove difficult to prove. Jantos has also alleged specific facts – which must be taken as true – that CenturyLink is subject to liability by virtue of its common control with DirecTV.  As an effective reseller of DirecTV's services, CenturyLink is liable for its publication of the personal information of Jantos and other subscribers.

DATED:  June 11, 2018.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER

 *s/ Chris R. Youtz*
 *s/ Richard E. Spoonemore*
Chris R. Youtz (WSBA #7786)
Richard E. Spoonemore (WSBA #21833)
 701 Fifth Avenue, Suite 2560
 Seattle, WA 98104
 Tel. (206) 223-0303; Fax (206) 223-0246
 Email:   cyoutz@sylaw.com
       rspoonemore@sylaw.com

—and—

RESPONSE TO CENTURYLINK'S
MOTION TO DISMISS – 17
[Case No. 2:18-cv-00413-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

MYERS & COMPANY, PLLC

*s/ Michael David Myers*

Michael David Myers (WSBA #22486)
  1530 Eastlake Avenue East
  Seattle, WA 98102
  Tel. (206) 398-1188; Fax (206) 400-1115
  Email:   mmyers@myers-company.com

**Attorneys for Plaintiff**

RESPONSE TO CENTURYLINK'S
MOTION TO DISMISS – 18
[Case No. 2:18-cv-00413-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

**CERTIFICATE OF SERVICE**

I hereby certify that on June 11, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

- **Amanda J. Beane**
  abeane@perkinscoie.com, docketsea@perkinscoie.com, jhernandez@perkinscoie.com

- **Erin K. Earl**
  EEarl@perkinscoie.com, EWeinkauf@perkinscoie.com, docketSEA@perkinscoie.com

- **Jordann Hallstrom**
  jhallstrom@corrcronin.com, jsteward@williamskastner.com

- **Emily J Harris**
  eharris@corrcronin.com, sdamon@corrcronin.com, reception@corrcronin.com

- **Todd M. Hinnen**
  thinnen@perkinscoie.com, kklemperer@perkinscoie.com, docketsea@perkinscoie.com, nmenaldo@perkinscoie.com, jstarr@perkinscoie.com

- **Michael David Myers**
  mmyers@myers-company.com, tpak@myers-company.com, evarriano@myers-company.com, slin@myers-company.com

- **Jennifer J. Oxley**
  oxley@wtotrial.com, wallace@wtotrial.com

- **Kathryn A. Reilly**
  reilly@wtotrial.com, cljones@wtotrial.com, meyer@wtotrial.com

- **Richard E. Spoonemore**
  rspoonemore@sylaw.com, matt@sylaw.com, rspoonemore@hotmail.com, theresa@sylaw.com

- **Chris Robert Youtz**
  chris@sylaw.com, matt@sylaw.com, theresa@sylaw.com

and I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

- (No manual recipients)

DATED:  June 11, 2018, at Seattle, Washington.

_s/ Chris R. Youtz_
Chris R. Youtz (WSBA #7786)

RESPONSE TO CENTURYLINK'S
MOTION TO DISMISS – 19
[Case No. 2:18-cv-00413-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246