Hon. Thomas S. Zilly

1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

JAMES JANTOS, individually, and on
behalf of similarly situated individuals,

10

NO.  2:18-cv-00413-TSZ

Plaintiff,

11

**JOINT MOTION OF ALL PARTIES
FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT**

v.

12

13

DIRECTV, a Delaware Corporation;
DIRECTV, LLC, a California Limited
Liability Corporation; and QWEST
CORPORATION d/b/a CENTURYLINK
QC, a Colorado Corporation,

14

**Noted for Consideration:
    June 14, 2019**

15

16

Defendants.

17

18

19

20

21

22

23

24

25

26

JOINT MOTION OF ALL PARTIES FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
[Case No. 2:18-cv-00413-TSZ]

Sirianni Youtz
Spoonemore Hamburger PLLC
701 Fifth Avenue, Suite 2560
Seattle, Washington  98104
Tel. (206) 223-0303    Fax (206) 223-0246

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................1

II.    BACKGROUND .................................................................................................2

       A.    Factual and Procedural Background .................................................2

       B.    Settlement and Preliminary Approval ...............................................4

       C.    The Parties Have Complied with the Order Granting
             Preliminary Approval. ........................................................................8

III.   ARGUMENT ....................................................................................................10

       A.    The Settlement is Fair, Reasonable, and Adequate ..........................11

             1.    The Class Representative and Class Counsel Have
                   Adequately Represented the Class ..........................................12

             2.    The Settlement was the Product of Informed, Non-
                   Collusive, and Arms-Length Negotiations ..............................13

             3.    The Settlement Benefits Provided to the Class Are
                   Adequate ..................................................................................14

                   a.    Costs, Risks, and Delay of Trial and Appeal .................15

                   b.    The Effectiveness of Distributing Relief to the
                         Settlement Class ............................................................18

                   c.    The Terms and Timing of the Proposed Award
                         of Attorney's Fees .........................................................18

                   d.    Agreements Made in Connection with the
                         Settlement Approval ......................................................18

             4.    The Settlement Treats Class Members Equitably
                   Relative to Each Other .............................................................19

       B.    Notice to the Class Satisfied the Requirements of Rule 23
             and Due Process. ..............................................................................20

       C.    The Notice Requirements of CAFA Have Been Satisfied. ...............22

IV.    CONCLUSION .................................................................................................23

JOINT MOTION OF ALL PARTIES FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT - ii
  [Case No. 2:18-cv-00413-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

## I.   INTRODUCTION

Plaintiff James Jantos ("Jantos") brought this action against Qwest Corporation d/b/a CenturyLink QC ("CenturyLink") and DIRECTV and DIRECTV, LLC (collectively, "DIRECTV," and together with CenturyLink, "Defendants") based on allegations that his and other subscribers' CenturyLink bills were potentially accessible to others online at a unique URL. Ten months earlier, Jantos had filed a putative class action against CenturyLink in King County Superior Court based on the same allegations (the "State Action"). After engaging in discovery in the State Action, motions practice in both actions, and a mediation, and after the Court denied preliminary approval of their prior settlement (Dkt. 41), Jantos and Defendants (collectively, the "Parties") reached an amended settlement, which they executed on December 12, 2018.

On January 29, 2019, this Court granted preliminary approval of the Parties' amended settlement (the "Settlement") (Dkt. 46). The Court found, on a preliminary basis, that "the Settlement appears fair, reasonable, and adequate," that it was reached after "an arm's-length negotiation that included a full-day mediation session and subsequent negotiations," and that it "falls within the appropriate range of possible approval and does not appear in any way to be the product of collusion." *Id.* § II.D, at 6. The Court also approved, with some modifications, the Parties' plan for providing notice to members of the Settlement Class and issued a schedule for notice and final approval of the Settlement. *See id.* § III, at 7-10.

Following preliminary approval, notice has been sent to the 855 members of the Settlement Class according to the plan of notice approved by the Court. The Settlement Class has reacted favorably to the settlement—to date, no class member has objected and only one has opted out. Accordingly, in this motion, the Parties respectfully request that the Court grant final approval of the Settlement.

JOINT MOTION OF ALL PARTIES FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT  – 1
[Case No. 2:18-cv-00413-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

## II.  BACKGROUND

### A.    Factual and Procedural Background

Jantos is a CenturyLink customer, and, during the relevant time period, received bundled telephone and internet services, as well as satellite television services provided by DIRECTV. Jantos alleges that, in 2017, after searching the internet for a phone number he did not recognize on his CenturyLink bill, he discovered his March 2017 bill was potentially accessible to others online via a unique URL. The bill included his name, address, phone number, phone numbers that he had called and received calls from, and his DIRECTV billings. The bill did not include his credit or debit card information, social security number, date of birth, or any other sensitive personal information. Additionally, Jantos alleges he was able to access similar information of other CenturyLink customers, including others who are DIRECTV subscribers. Jantos does not allege that either his CenturyLink bills, or the bills of other subscribers, were in fact accessed by unauthorized third parties. Based on these allegations, Jantos filed two lawsuits—the State Action in May 2017 in the Superior Court of the State of Washington for King County against CenturyLink only, and the other in March 2018 in this Court, which also included DIRECTV as a defendant (the "Federal Action").

In the State Action, Jantos alleged claims against CenturyLink for:  violation of the Washington Consumer Protection Act, breach of contract, negligence, breach of fiduciary duty, breach of duty of confidence, violations of the Telecommunications and Cable Acts, and invasion of privacy. In addition, Jantos alleged in the State Action that he expended time addressing the potential accessibility of his bill to others online that was unrelated to any litigation and that he otherwise would have been able to allocate to his legal practice and compensable work. Jantos sought to represent a putative class of Washington residents whose bills were also potentially accessible by others online.

JOINT MOTION OF ALL PARTIES FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT  – 2
[Case No. 2:18-cv-00413-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

1    CenturyLink moved to dismiss the State Action for failure to state a claim, which the

2    state court summarily denied in December 2017.

3    In the Federal Action, Jantos alleged that Defendants violated the privacy

4    protection provided to consumers of satellite services under the Satellite Home Viewer

5    Extension and Reauthorization Act ("SHVERA"), codified at 47 U.S.C. § 338(i), by

6    disclosing and failing to protect his information related to his DIRECTV subscription.

7    SHVERA prohibits satellite carriers from disclosing or failing to prevent the disclosure

8    of personal information about a consumer without prior express consent, and a violation

9    of § 338 gives rise to a private cause of action in federal court and entitles an aggrieved

10   person to "actual damages, but not less than liquidated damages computed at the rate

11   of $100 a day for each violation or $1,000, whichever is higher," punitive damages, and

12   attorney fees and costs of suit. 47 U.S.C. § 338(i)(7). Jantos sought to represent a

13   nationwide class of CenturyLink customers who also subscribed to DIRECTV and whose

14   bills were potentially accessible to others online. Jantos has not alleged actual damages

15   on behalf of either himself or the putative class, but instead claims that he and the

16   putative class are entitled to liquidated damages based on his allegation that their

17   CenturyLink bills were potentially accessible to others online. In May 2018, CenturyLink

18   filed a motion to dismiss the Federal Action for lack of standing and failure to state a

19   claim for relief. At the same time, DIRECTV moved to compel arbitration under the

20   arbitration provision in its subscriber agreement with Jantos and, alternatively, joined

21   CenturyLink's motion to dismiss for lack of standing.

22   After engaging in some written discovery in the State Action, the Parties agreed

23   to stay that action pending the resolution of CenturyLink's motion to dismiss the Federal

24   Action.

25

26

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

**B.    Settlement and Preliminary Approval**

On July 16, 2018, the Parties participated in a day-long mediation with Judge Bruce Hilyer (retired), which resulted in the Parties' negotiation of and agreement to the original Settlement. The Parties filed a Joint Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class on October 22, 2018.   On November 21, 2018, solely for purposes of effectuating the Settlement and as authorized by the Court (Dkt. 41), Plaintiff amended the Complaint in this Federal Action to assert an additional claim against CenturyLink only under the Telecommunications Act, 47 U.S.C. § 222, on behalf of a nationwide class of affected CenturyLink customers, regardless of whether or not those individuals also were DIRECTV customers (Dkt. 42).[1]

On November 7, 2018, the Court denied the parties' joint motion without prejudice and raised issues regarding certain provisions of the original agreement reached by the parties, as well as portions of the Class Notice and other explanatory documents attached thereto.  The parties negotiated and entered the Amended Class Action Settlement Agreement and Release of All Claims (the "Settlement Agreement"). The Settlement Agreement, dated December 12, 2018 and attached as Exhibit 1 to the Parties' Joint Renewed Motion for Preliminary Approval of Class Settlement (Dkt. 45-1), resolves all of Jantos' and the settlement class members' claims against Defendants and addresses the Court's concerns. A brief summary of the Settlement follows:

- Dismissal of State Action and Amendment of Federal Complaint – Solely for purposes of effectuating this Settlement, and pursuant to the Settlement Agreement, Plaintiff amended the complaint in this action to add a Telecommunications Act claim pursuant to 47 U.S.C. § 222 on behalf of a putative nationwide class that includes all 855 CenturyLink customers

---

[1] Plaintiff and CenturyLink also sought and were granted a stay of the State Action pending final approval of the Settlement.

JOINT MOTION OF ALL PARTIES FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT  – 4
[Case No. 2:18-cv-00413-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

whose bills were potentially accessible by others online at a unique URL (Dkt. 42). Plaintiff will voluntarily dismiss the State Action after final approval of this Settlement.

- <u>Class Definition and Class Period</u> – Solely for purposes of implementing the Settlement, Defendants stipulated to the conditional certification of the "Settlement Class" on a nationwide basis. (Settlement Agreement § II.) The Settlement Class means all 855 current and former customers of CenturyLink in the United States and its territories who were identified by CenturyLink as customers whose CenturyLink bill(s) were potentially accessible online by others at a URL beginning with "repsweb.centurylink.com" between March 5, 2017, and May 18, 2017. (*Id.* § I(II).) The Settlement Class has one subclass, the "DIRECTV Subclass," which consists of Settlement Class Members whose CenturyLink bill(s) were potentially accessible online by others at a URL beginning with "repsweb.centurylink.com" between March 5, 2017, and May 18, 2017, and included information about their DIRECTV services. (*Id.* at § I(N).)

- <u>Benefits to Settlement Class Members</u> – All Settlement Class Members will receive an activation code for one year of three-bureau credit monitoring service and $1 million in identity theft insurance, which is worth approximately $180 - $200 per year, and will provide these subclass members robust credit monitoring and protection from identity theft. (*Id.* § IV(B).) The DIRECTV Subclass members will each receive, in addition to that activation code, $520 in the form of a credit to their CenturyLink bill, if they are a current CenturyLink Customer, or $520 payable by check, if they are not a current CenturyLink Customer. The additional relief for

JOINT MOTION OF ALL PARTIES FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT  – 5
[Case No. 2:18-cv-00413-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

members of the DIRECTV Subclass is driven by the availability of statutory damages under SHVERA.

- Compensation to Plaintiff – In addition to the benefits provided to all Settlement Class Members, Plaintiff James Jantos, subject to the Court's approval, will receive $10,000 from Defendants as a service award for his efforts in litigating the State and Federal Actions. (*Id.* § VII.)

- Class Counsel's Reasonable Attorney Fees and Costs – Defendants have agreed to pay the reasonable attorney fees and costs of "Class Counsel," meaning the law firms Sirianni Youtz Spoonemore Hamburger and Myers & Company, PLLC, up to $150,000. (*Id.* §§ I(D), X(A).) The amount of attorney fees and costs shall be determined by the Court. (*Id.* § X(B).) On March 14, 2019, Class Counsel filed a fee application seeking an award of $150,000 in fees and costs, subject to Court approval (Dkt. 47).

- Settlement Administration – The parties selected Rust Consulting to serve as the Settlement Administrator. (Settlement Agreement § I(FF).)

- Costs of Notice and Claims Administration – Defendants will pay the administration and settlement notice expenses, but are not responsible for any costs incurred by, on behalf of, or at the direction of Jantos or Class Counsel in (a) responding to inquiries about the Settlement Agreement, the Settlement, or the Federal or State Actions; (b) defending the Settlement Agreement or the Settlement against any challenge to it; or (c) defending against any challenge to any order or judgment entered pursuant to the Settlement Agreement, unless otherwise specifically agreed. (*Id.* § VI.)

- Fairness Hearing – At the Fairness Hearing, the Parties will jointly request that the Court enter the Final Approval Order and Class Counsel will move for entry of a separate order approving the service award to Jantos and

JOINT MOTION OF ALL PARTIES FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT – 6
[Case No. 2:18-cv-00413-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303    FAX (206) 223-0246

Class Counsel's attorney fees and costs award. In addition, any Settlement Class Member and/or his or her lawyer may appear and present objections to or other remarks about this Settlement. (*Id.* § VIII(C).)

- <u>Scope of Release and Final Judgment</u> – Jantos and all participating Settlement Class Members will release all federal and state statutory or common law claims that have been or could have been brought against the Released Parties, as defined in the Settlement Agreement, for any and all losses and damages relating to, in connection with, or directly or indirectly arising from the online accessibility of their CenturyLink bill or bills. Upon entry of the Final Approval Order by the Court, the Federal Action and the State Action will be dismissed with prejudice. (Settlement Agreement § XI.)

On January 29, 2019, this Court granted preliminary approval of the Settlement (Dkt. 46). The Court found, on a preliminary basis, that "the Settlement appears fair, reasonable, and adequate," that it was reached after "an arm's-length negotiation that included a full-day mediation session and subsequent negotiations," and that it "falls within the appropriate range of possible approval and does not appear in any way to be the product of collusion." *Id.* § II.D, at 6. The Court also certified, for settlement purposes only, the Settlement Class and the DIRECTV Subclass; appointed Plaintiff as the Class Representative for the Settlement Class and the DIRECTV Subclass; and appointed the law firms of Sirianni Youtz Spoonemore Hamburger, and Myers & Company, PLLC, as Class Counsel for the Settlement Class and the DIRECTV Subclass. *See id.* § I, at 2-5. Finally, the Court approved, with some modifications, the Parties' plan for providing notice to members of the Settlement Class and issued a schedule for notice and final approval of the Settlement. *See id.* §§ III-IV, at 7-11.

JOINT MOTION OF ALL PARTIES FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT  – 7
[Case No. 2:18-cv-00413-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

**C.    The Parties Have Complied with the Order Granting Preliminary Approval.**

As directed by the Court, the Parties modified the Class Notice to describe the possibility of an appeal or appellate decision affecting the Settlement, to remove language suggesting that the Final Approval Hearing might be rescheduled without notice to the Settlement Class Members, and to explicitly state in bold text that the date of the Fairness Hearing was changed from June 7, 2019 (as stated in the preliminary approval Order) to June 14, 2019. *See id.* § III.D.1; *see also* Decl. of Rust Consulting dated Mar. 14, 2019 (Dkt. 49) ("Rust Notice Decl.") Exs. A-B (Class Notice).

In addition, on February 21, 2019, pursuant to the Court's Order granting preliminary approval of the Settlement, the Settlement Administrator opened to the public a Settlement Website enabling Settlement Class Members to read the Class Notice, FAQ, and pertinent filings in this case, including Class Counsel's Fee Application and relevant orders of this Court, as well as to complete, review, and submit a request for exclusion online. *See* Rust Notice Decl. ¶ 3. Like the Class Notice, the Settlement Website explicitly states in bold text that the date of the Fairness Hearing was changed from June 7, 2019 (as stated in the preliminary approval Order) to June 14, 2019. The Settlement Administrator also opened a toll-free number, which enables Settlement Class Members to listen to answers to frequently-asked questions and to request that copies of Court documents be mailed or emailed to them, on February 27, 2019. *Id.* ¶ 4.

On February 28, 2019, the Settlement Administrator emailed the Class Notice to the 792 Settlement Class Members whose email addresses Defendants could reasonably identify. *Id.* ¶ 5. In addition, the Settlement Administrator sent, or caused to be sent, the Class Notice by first-class U.S. Mail to 844 of the 861 customer records provided by CenturyLink as associated with the 855 Settlement Class Members (the list of 861 customer records included six pairs of customer records that duplicated each other). *Id.* ¶¶ 1, 6. This mailing used 111 updated addresses that the Settlement Administrator

JOINT MOTION OF ALL PARTIES FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT  – 8
[Case No. 2:18-cv-00413-TSZ]

identified through the National Change of Address database. *Id.* Seventeen of the 861 customer records contained incomplete mailing address information that could not be completed by using address lookup tools, but each of these seventeen Settlement Class Members was sent a copy of the Class Notice by email on February 28, 2019. In addition, on March 12, 2019, after the Settlement Administrator obtained complete address information for these seventeen Class Members, Rust Consulting sent copies of the Class Notice to those seventeen Class Members by overnight delivery and confirmed that all seventeen copies were delivered by no later than March 15, 2019. *Id.* ¶ 7; Decl. of Rust Consulting dated May 23, 2019 ("Rust Final Decl.") ¶ 2.

Defendants filed a Declaration from the Settlement Administrator confirming compliance with the notice requirements set forth in the Settlement Agreement and the Court's preliminary approval Order on March 14, 2019. Rust Notice Decl. (Dkt. 49). Of the 861 Class Notices sent out, only one was returned as undeliverable with a forwarding address and it was promptly re-mailed. Rust Final Decl. ¶ 1. Before the exclusion period ended on April 30, 2019, the Settlement Administrator received a total of 34 Class Notices that were returned as undeliverable but were unable to be forwarded. *Id.* ¶ 3. Using a skip-tracing process, the Settlement Administrator identified updated addresses for 30 of those Settlement Class Members and promptly re-mailed those notices; nine were returned as undeliverable for a second time. *Id.* Rust Consulting received two additional Class Notices that were returned as undeliverable without a forwarding address after April 30, 2019, when the exclusion period ended. Rust Consulting used a skip-tracing process to identify updated addresses for one of those Settlement Class Members and promptly re-mailed a copy of the Class Notice to that member. That copy has not been returned as undeliverable a second time. *Id.* ¶ 4. Accordingly, of the 861 Class Notices mailed by the Settlement Administrator, all but 14 were delivered, a delivery rate of 98.4%. *Id.* ¶ 5.

JOINT MOTION OF ALL PARTIES FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT  – 9
[Case No. 2:18-cv-00413-TSZ]

1    Through the April 30, 2019 deadline to request exclusion from the Settlement

2 Class, only one Settlement Class member has excluded herself from the Settlement and

3 none has submitted any Objection. *Id.* ¶¶ 7-8. To this date, no further Requests for

4 Exclusion or Objections have been received by the Settlement Administrator. *Id.* ¶ 9.

5    The Declaration of the Settlement Administrator summarizing and attaching the

6 list of all Settlement Class Members who submitted Requests for Exclusion and any

7 objections received by the Settlement Administrator is being filed concurrently with this

8 Motion (Dkt. 46 §§ III.D.4).

9                    **III.  ARGUMENT**

10    When considering a motion for final approval of a class action settlement under

11 Federal Rule of Civil Procedure 23(e)(2), the Court's inquiry is whether the settlement is

12 "fair, reasonable, and adequate." *See also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268,

13 1276 (9th Cir. 1992). A settlement is fair, reasonable, and adequate when "the interests of

14 the class as a whole are better served if the litigation is resolved by the settlement rather

15 than pursued." Herbert B. Newberg & Alba Conte, Newberg on Class Actions (5th)

16 § 11.157 (citing Manual for Complex Litigation (4th) § 21.62); *see also* Fed. R. Civ. P.

17 23(e)(2)(C) (considerations for approving settlement include whether "the relief

18 provided for the class is adequate"). The Court's role is to ensure that "the agreement is

19 not the product of fraud or overreaching by, or collusion between, the negotiating

20 parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all

21 concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (internal quotes

22 and citations omitted); *see also* Fed. R. Civ. P. 23(e)(2)(B) (considerations for approving

23 settlement include whether "the proposed settlement was negotiated at arm's length").

24 Whether to approve or reject a proposed settlement is committed to the Court's sound

25 discretion. *City of Seattle*, 955 F.2d at 1291. A strong judicial policy favors settlements of

26 class action matters. *See City of Seattle*, 955 F.2d at 1276 (settlement preferred "particularly

JOINT MOTION OF ALL PARTIES FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT  – 10
[Case No. 2:18-cv-00413-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

1    where complex class action litigation is concerned"); *Officers for Justice v. Civil Serv.*

2    *Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)

3    ("voluntary conciliation and settlement are the preferred means of dispute resolution.

4    This is especially true in complex class action litigation.").

5          This Court already has certified the Settlement Class and the DIRECTV Subclass

6    for settlement purposes only, and has appointed Plaintiff James Jantos as the Class

7    Representative for the Settlement Class and the DIRECTV Subclass and the law firms of

8    law firms of Sirianni Youtz Spoonemore Hamburger, and Myers & Company, PLLC as

9    Class Counsel for the Settlement Class and the DIRECTV Subclass. Accordingly, final

10   approval should be granted because the settlement is fair, reasonable, and adequate;

11   because notice to the Settlement Class satisfied the requirements of Rule 23 and the Due

12   Process Clause; and because the Notice requirements of the Class Action Fairness Act

13   ("CAFA") have been met.

14   **A.    The Settlement is Fair, Reasonable, and Adequate**

15         In deciding whether to approve a proposed class action settlement, the Court

16   must find that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ.

17   P. 23(e)(2); *Rodriguez v. West Pub'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009). Rule 23 requires

18   the Court to make this determination after considering whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified

JOINT MOTION OF ALL PARTIES FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT  – 11
[Case No. 2:18-cv-00413-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

under Rule 23(e)(3)[2]; and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2);[3] *see also Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (factors to consider include "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement"); *Ikuseghan v. Multicare Health Sys.*, No. 3:14-CV-05539-BHS, 2016 WL 3976569, at *3 (W.D. Wash. July 25, 2016) (noting the "presumption that a class settlement is fair and should be approved if it is the product of arm's-length negotiations conducted by capable counsel with extensive experience in complex class action litigation"). Applying these considerations to this case, the Settlement is fair, reasonable, and adequate.

## 1. The Class Representative and Class Counsel Have Adequately Represented the Class

Plaintiff (the Class Representative) and Class Counsel have adequately represented the class in this action. In appointing Plaintiff to serve as Class Representative and his counsel as Class Counsel, the Court found that Plaintiff "can fairly, fully, and adequately protect the interests of the Settlement Class and the DIRECTV Subclass," that "Plaintiff's counsel is experienced in prosecuting complex

---

[2] Rule 23(e)(3) provides that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3).

[3] The goal of the amendments to Rule 23(e)(2) that took effect on December 1, 2018, was "not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2), adv. committee's note to 2018 amends. To avoid the risk of "distract[ing] both the court and the parties from the central concerns that bear on review under Rule 23(e)(2)," the amended rule provides "a shorter list of core concerns" that "focus[es] on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal." *Id.*

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

class-action litigation," that neither has an "interest that conflicts with, or is adverse to, the interests of the Settlement Class or the DIRECTV Subclass." Preliminary Approval Order § I.A.5 at 3.

In addition, Plaintiff and Class Counsel pursued both formal and informal discovery in both the State Action and Federal Action. The record developed through the investigation and discovery process allowed the Parties to realistically estimate class damages and assess the risks of further litigation. It was only after the Parties thoroughly investigated and evaluated the strengths and weakness of the case, and attended mediation, that the Settlement was completed. This litigation, therefore, has reached the stage where the Parties have a clear view of the strengths and weaknesses of their claims and defenses sufficient to support the Settlement. *See Lewis v. Starbucks Corp.*, No. 2:07-CV-00490-MCEDAD, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008) (stating "approval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases").

Finally, as described in more detail below, the benefits obtained for class members through this settlement are adequate and appropriate in light of the strengths and weaknesses of the Parties' claims and defenses, confirming that the Class Representative and Class Counsel have adequately represented the Settlement Class and the DIRECTV Subclass.

## 2.    The Settlement was the Product of Informed, Non-Collusive, and Arms-Length Negotiations

Here, the Settlement was a product of intensive, adversarial litigation between the Parties. It was reached after a full-day mediation session before an experienced and well-respected mediator. Notably, the Parties spent months prior to the mediation developing the factual record for this case, exchanging written discovery in the State Action, drafting detailed motion to dismiss briefing and mediation briefs, exchanging informal

JOINT MOTION OF ALL PARTIES FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT  – 13
[Case No. 2:18-cv-00413-TSZ]

discovery, and ensuring both sides were fully informed about the strengths and weaknesses of their respective positions. In addition, the Parties are represented by skilled and experienced counsel. These factors support a finding that the Settlement is fair, reasonable, and adequate. *See Hanlon,* 150 F.3d at 1027 (affirming trial court's approval of class action settlement where parties reached agreement after months of negotiation and record contained no evidence of collusion).

### 3.    The Settlement Benefits Provided to the Class Are Adequate

Under the Settlement, each Settlement Class Member will receive one year of robust three-bureau credit monitoring service and $1 million in identity theft insurance, valued at approximately $180-200 per year. The DIRECTV Subclass members will receive an additional $520, yielding total compensation of $700-$720, or approximately 70% of the value of the statutory damages that Jantos claimed were owed to DIRECTV Subclass members under SHVERA's liquidated damages provision. That the cash settlement amounts to less than the potential recovery does not render the settlement unfair. *See, e.g., Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco,* 688 F.2d 615, 628 (9th Cir. 1982); *see also, e.g., Rodriguez,* 563 F.3d at 964−65 (approving settlement amounting to 30% of estimated damages and noting that even if the plaintiffs were entitled to treble damages, settlement would be about 10% of estimated damages).

The settlement benefits therefore are fair and appropriate, in light of (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

### a.    Costs, Risks, and Delay of Trial and Appeal

The benefits provided to Settlement Class members in the Settlement are a fair compromise given the uncertainties presented by continued litigation. The Parties have asserted, and would have to continue to assert, legal and factual grounds to litigate the State and Federal Actions, and while the Parties are confident in their respective claims and defenses, continued litigation would be costly, time consuming, and uncertain.

Specifically, Jantos alleges that he discovered his March 2017 CenturyLink bill was potentially accessible to others online when he used the Bing search engine to attempt to identify the owner of a telephone number on the bill. He also claims he discovered that he could also access the bills of other Washington customers online. Jantos' bill contained his phone number, the phone numbers of individuals with whom he spoke, his CenturyLink account number, the services he purchased, and the details of his charges for and usage of those services.

In this action, Jantos alleges that CenturyLink violated provisions of the Telecommunications Act that prohibit carriers from disclosing personal information, 47 U.S.C. § 222. *See* Am. Compl., Dkt. 42 ¶ 11. In his Telecommunications Act claim, Jantos seeks to represent a nationwide class of 855 CenturyLink customers whose CenturyLink bills were available online to others and seeks, on his and their behalf, "the full amount of damages sustained in consequence" of the alleged violation. *Id.* ¶ 39 (quoting 47 U.S.C. § 222).  Jantos further alleges that Defendants violated the privacy protection provided to consumers of satellite services under SHVERA, 47 U.S.C. § 338(i), by disclosing and failing to protect his subscriber information. *Id.* ¶¶ 31-33. Jantos seeks to assert his SHVERA claim on behalf of a nationwide class of 311 CenturyLink customers whose bills were available online to others and contained DIRECTV subscriber information. For his SHVERA claim, Jantos sought statutory damages, punitive damages, and attorney fees, and he estimated damages as, at minimum, $1,000 per class member.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

In the Federal Action, Defendants argued Jantos lacked Article III standing and otherwise failed to state a viable SHVERA claim because he failed to allege any unauthorized third party accessed his CenturyLink bill—much less that he suffered any concrete harm in connection with the online accessibility of his bill. Jantos responded that he had Article III standing because the privacy section of SHVERA, which Jantos alleged Defendants violated, provides subscribers like him a substantive, "concrete right to control the disclosure of personal information handled by the providers." (Dkt. 29 at 9.) Further, "[a]ctions to remedy defendants' invasions of privacy have long been heard by American courts, and the right of privacy is recognized by most states." *Id.* at 11. Accordingly, Jantos argued that under *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1650 (2016), his alleged injury was "sufficiently concrete for him to have standing to bring suit under SHVERA." *Id.* at 11.

CenturyLink also argued that Jantos had failed to state a SHVERA claim because CenturyLink is not a satellite carrier, and therefore it is not subject to liability under SHVERA. The Telecommunications Act claim was not added until after preliminary approval of the settlement and therefore was not addressed in the motion to dismiss. However, CenturyLink would argue that Jantos' Telecommunications Act cannot stand because he cannot show "specific damages" to his "person, property, health, or reputation" flowing from the alleged statutory violation. *See* 47 U.S.C. § 206 (providing a private right of action for violations of § 222); *Conboy v. AT&T Corp.*, 241 F.3d 242, 250-51, 256 (2d Cir. 2001) (explaining that hypothetical or presumed damages are not allowed and instead the offense must be "virtually certain" to cause damages). Further, even if Jantos could show specific damages to himself under the Telecommunications Act, a class is unlikely to be certified on that claim because individual issues would predominate on the question of whether other CenturyLink subscribers whose bills were potentially accessible to others online could show specific damages to their person,

property, health, or reputation.[4]  Jantos would argue that he and other class members suffered actual damages based on having their private information published and that even if such damages are essentially nominal, courts have recognized that nominal damages are sufficient for a Telecommunications Act claim. *See, e.g., Conboy*, 241 F.3d 242.

DIRECTV moved to compel arbitration, arguing that Jantos had entered into a binding Customer Agreement with DIRECTV to arbitrate his disputes with DIRECTV on an individual basis. DIRECTV also argued that Jantos' assertions that the Customer Agreement was an unenforceable adhesion contract or that the arbitration clause was otherwise unenforceable were without merit. CenturyLink asserted that, if the Federal Action was not dismissed, Jantos' SHVERA claim against CenturyLink should also be ordered into arbitration pursuant to the arbitration provision in DIRECTV's Customer Agreement.

The parties also dispute whether class certification would be warranted and the amount of statutory damages available under SHVERA.

Defendants' motions to dismiss and to compel arbitration remain pending and, even if the claims proceed, the Parties would still have to litigate class certification, liability, and damages. Such efforts would likely take years, and necessitate expert witness testimony, as well as other costs, risks, and potential delays. Appellate risks could further delay and jeopardize recovery. By contrast, the Settlement ensures timely relief to the Settlement Class. For these reasons, considering the costs, risks, and delay of trial and appeal weighs in favor of approving the Settlement.

---

[4] Although not the subject of the Federal Action or this Motion for Final Approval of Class Action Settlement, CenturyLink has argued that Jantos's remaining state law claims suffered from similar weaknesses—namely that Jantos cannot show actual damages stemming from the common law violations, and as such, he would not succeed on the merits of his claims.

JOINT MOTION OF ALL PARTIES FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT  – 17
[Case No. 2:18-cv-00413-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

### b.    The Effectiveness of Distributing Relief to the Settlement Class

Because all of the Settlement Class Members are current or former CenturyLink customers, there is no need to engage in a claims process. Rather, CenturyLink (on behalf of Defendants) will directly distribute relief to the Settlement Class and the DIRECTV Subclass. Such direct distribution of the settlement benefits will put no burden on class members, and will ensure that relief is provided the vast majority of the Settlement Class, as established by the high level of success of the notice plan implemented by the Settlement Administrator pursuant to the Preliminary Approval Order, as described further below. Accordingly, the effectiveness of the proposed method of distributing relief to the Settlement Class and the DIRECTV Subclass weighs in favor of approving the Settlement.

### c.    The Terms and Timing of the Proposed Award of Attorney's Fees

As recognized by the Court, the Parties did not negotiate any award of attorney's fees until *after* they reached an agreement as to benefits for the Class Members. *See* Preliminary Approval Order § II.D, at 6; *see also* Pl.'s Appl. For Attorney Fees and Costs, and Approval of Incentive Award (Dkt. 47) at 2 n.1. Further, any award of attorney's fees is separate from, and therefore has no impact, on the proposed benefits to be provided to the Settlement Class or the DIRECTV Subclass. Accordingly, the terms of the proposed attorney's fees award weighs in favor of approving the Settlement.

### d.    Agreements Made in Connection with the Settlement Approval

The Settlement Agreement "constitutes and comprises the entire agreement between the Parties" concerning the proposed Settlement. Settlement Agreement § XIV.G, at 20. Because there are no "side agreements made in connection with the proposed settlement pursuant to Rule 23(e)(3)[] . . . there is nothing for the Court to

---

JOINT MOTION OF ALL PARTIES FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT  – 18
[Case No. 2:18-cv-00413-TSZ]

consider." *Zamora Jordan v. Nationstar Mortg., LLC*, No. 2:14-CV-0175-TOR, 2019 WL 1966112, at *5 (E.D. Wash. May 2, 2019).

### 4. The Settlement Treats Class Members Equitably Relative to Each Other

As described above, the Settlement provides that DIRECTV Subclass members will receive benefits in addition to those provided to all members of the Settlement Class. Specifically, as relief for their Telecommunications Act claims, each Settlement Class Member will receive a code permitting him or her to activate one year of credit monitoring service and $1 million in identity theft insurance, valued at approximately $180-200 per year. The DIRECTV Subclass members, as relief for their SHVERA claims, will receive an additional $520, yielding total compensation of $700-$720.

The additional benefit for DIRECTV Subclass members is appropriate because only the DIRECTV Subclass members can assert a claim for statutory damages under SHVERA. The combined benefits that DIRECTV Subclass members will receive under the Settlement, in the form of a cash payment and the ability to activate one year of credit monitoring and identity theft services, are worth approximately 70% of the value of the statutory damages that Jantos claimed were owed to DIRECTV Subclass members under SHVERA's liquidated damages provision. Because the Telecommunications Act does not provide for statutory damages, members of the Settlement Class who are not in the DIRECTV Subclass would have had to prove they suffered actual damages to obtain any recovery. Although all Settlement Class Members are getting material value from the settlement, the availability of statutory damages for the DIRECTV Subclass members' SHVERA claims, and the difficulty of proving actual damages for purposes of the Telecommunications Act claims, justifies the difference in the benefits offered to each subclass. *See* Preliminary Approval Order § II.D, at 6 (finding that "the Settlement appears fair, reasonable, and adequate" on a preliminary basis, taking into account "the

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303    FAX (206) 223-0246

1  statutory damages provision in the [SHVERA], the violation of which is alleged by the

2  DIRECTV Subclass only, and the non-availability of statutory damages under the

3  Telecommunications Act, the violation of which is alleged by all Settlement Class

4  Members").

5         Finally, the Settlement's equitable treatment of class members is confirmed by the

6  reaction of the class members to the proposed settlement. The reaction of class members

7  to the proposed settlement has been positive, with only one Settlement Class member

8  having excluded herself and none submitting any objection to the settlement. Rust Final

9  Decl. ¶¶ 7-9. The lack of objections creates a "strong presumption" that the class favors

10 approval. *Nat'l Rural Telecoms. Coop. v. DIRECT, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004)

11 ("It is established that the absence of a large number of objections to a proposed class

12 action settlement raises a strong presumption that the terms of a proposed class

13 settlement action [sic] are favorable to the class members.").

14 **B.    Notice to the Class Satisfied the Requirements of Rule 23 and Due Process.**

15        To protect the rights of absent class members, courts must provide the best notice

16 practicable of a potential class action settlement. *See Phillips Petroleum Co. v. Shutts*, 472

17 U.S. 797, 811–12 (1985). This means the notice must be "reasonably calculated, under all

18 the circumstances, to apprise interested parties of the pendency of the action and afford

19 them an opportunity to present their objections." *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th

20 Cir. 1994) (internal quotation marks and citation omitted).

21        Here, because the Settlement Class Members are current or former CenturyLink

22 customers, CenturyLink has either current or last known addresses for Settlement Class

23 Members, and also has email addresses for some current or former customers. To that

24 end, and pursuant to the terms of the Settlement Agreement and the Court's Preliminary

25 Approval Order, the Settlement Administrator emailed the Class Notice to the 792

26 Settlement Class Members whose email addresses Defendants could reasonably identify.

JOINT MOTION OF ALL PARTIES FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT – 20
[Case No. 2:18-cv-00413-TSZ]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303    FAX (206) 223-0246

Rust Notice Decl. ¶ 5. In addition, the Settlement Administrator disseminated individual notice to Settlement Class members by first-class mail or overnight delivery sent, or caused to be sent, the Class Notice by first-class U.S. Mail to 844 of the 861 customer records provided by CenturyLink as associated with the 855 Settlement Class Members (the list of 861 customer records included six pairs of customer records that duplicated each other). *Id.* ¶¶ 1, 6. After forwarding the notice returned with a forwarding address and after using skip-tracing to identify updated addresses for the 36 notices returned without forwarding addresses, only 14 of the 861 Class Notices mailed by the Settlement Administrator were not delivered, a delivery rate of 98.4%. Rust Final Decl. ¶ 5.

The Class Notice (attached as Exhibits A-B to the Rust Notice Declaration) informed Settlement Class Members of the Settlement, explained the benefits provided, and provided the request for exclusion form. (Settlement Agreement § I(E).) In addition, the Settlement Administrator opened a Settlement Website enabling Settlement Class Members to read the Class Notice, FAQ, and pertinent filings in this case, including Class Counsel's Fee Application and relevant orders of this Court, as well as to complete, review, and submit a request for exclusion online. *See* Rust Notice Decl. ¶ 3. The Settlement Administrator also opened a toll-free number, which enables Settlement Class Members to listen to answers to frequently-asked questions and to request that copies of Court documents be mailed or emailed to them. *Id.* ¶ 4.

The notice program used in this case ensured that notice went out to Settlement Class Members in the manner best calculated to ensure that they would be alerted to the terms of the Settlement and provided with the opportunity to respond to it. *See, e.g.*, *Booth v. Appstack, Inc.*, No. 2.13-CV-01533-JLR, 2016 WL 7851472, at *2 (W.D. Wash. Aug. 29, 2016) (approving "notice plan for giving direct notice to the Settlement Class by U.S. Mail" because it "constitutes the best notice practicable under the circumstances"); *Rajagopalan v. Meracord, LLC*, No. 12-CV-05657-BHS, 2015 WL 12564237, at *2 (W.D.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

Wash. May 14, 2015) (directing email notice where defendant reported that the customer database contains email addresses for approximately 75% of customer accounts). As the Court found in its Preliminary Approval Order, "the proposed plan for distributing and disseminating each of them will provide the best notice practicable under the circumstances and satisfies all requirements of federal and Washington laws and due process." (Dkt. 46 at 8.) The notice program accordingly meets constitutional standards and the requirements of Federal Rule of Civil Procedure 23(e).

**C.**     **The Notice Requirements of CAFA Have Been Satisfied.**

CAFA, 28 U.S.C. § 1715(b), provides that "[n]ot later than 10 days after a proposed settlement of a class action is filed in court, each defendant shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement." Here, the Parties filed the proposed Settlement Agreement with the Court on December 12, 2019. (Dkt. 45-1.) On December 21, 2018, within ten days after filing of that Settlement Agreement, Defendants caused the Settlement Administrator to serve a notice of the proposed settlement upon the appropriate state official of each of the states where Settlement Class Members reside and upon the Attorney General of the United States ("CAFA Notice"). *See* Rust Final Decl. ¶ 6. The Settlement Administrator included with the CAFA Notice certain court filings and documents, as required under 28 U.S.C. § 1715(b)(1)-(6), and provided with the CAFA Notice a list of Class members, segregated by State pursuant to 28 U.S.C. § 1715(b)(7). *Id.* No objections were received from any of the government officials to whom notice was given. *Id.*

The CAFA Notice was sufficient in all respects and supports this request for final approval of the settlement.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

## IV. CONCLUSION

For the foregoing reasons, the Court should grant final approval of the Settlement Agreement and enter the Proposed Order Granting Final Approval of Class Action Settlement submitted herewith, and grant such other and further relief as the Court deems just.

DATED: May 23, 2019.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC

s/ Richard E. Spoonemore
Richard E. Spoonemore (WSBA #21833)
701 Fifth Ave., Suite 2560
Seattle, WA 98104
Telephone:   206.223.0303
Facsimile: 206.223.0246
Email:   rspoonemore@sylaw.com


MYERS & COMPANY, PLLC

s/ Michael David Myers
Michael David Myers (WSBA #22486)
1530 Eastlake Ave. East
Seattle, WA 98102
Telephone:   206.398.1188
Facsimile: 206.400.1115

Attorneys for Plaintiff James Jantos

WHEELER TRIGG O'DONNELL

s/ Kathryn A. Reilly
Kathryn A. Reilly (admitted pro hac vice)
Jennifer J. Oxley (admitted pro hac vice)
370 Seventeenth Street, Suite 4500
Denver, CO  80202-5647
Telephone:  303.244.1800
Email: reilly@wtotrial.com
            oxley@wtotrial.com


PERKINS COIE

s/ Amanda J. Beane
Erin K. Earl, WSBA No. 49341
Todd M. Hinnen, WSBA No. 27176
Amanda J. Beane, WSBA No. 33070
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Telephone:  206.359.3384
Email:    eearl@perkinscoie.com
            thinnen@perkinscoie.com
            abeane@perkinscoie.com

Attorneys for Defendant Qwest Corporation
d/b/a CenturyLink QC

JOINT MOTION OF ALL PARTIES FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT  – 23
[Case No. 2:18-cv-00413-TSZ]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CORR CRONIN, LLP

*s/ Emily J. Harris*

Emily J. Harris, WSBA No. 35763
Jordan M. Hallstrom, WSBA No. 48036
1001 Fourth Avenue, Suite 3900
Seattle, WA 98154
Telephone:  206.625.8600
Email:    eharris@corrcronin.com
            jhallstrom@corrcronin.com

*Attorneys for Defendant DIRECTV and DIRECTV, LLC*

JOINT MOTION OF ALL PARTIES FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT  – 24
[Case No. 2:18-cv-00413-TSZ]

**CERTIFICATE OF SERVICE**

I hereby certify that on May 23, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

- **Amanda J. Beane**
  abeane@perkinscoie.com, docketsea@perkinscoie.com, jhernandez@perkinscoie.com

- **Erin K. Earl**
  EEarl@perkinscoie.com, EWeinkauf@perkinscoie.com, docketSEA@perkinscoie.com

- **Jordann Hallstrom**
  jordannhallstrom@dwt.com, margaretsinnott@dwt.com, SEAdocket@dwt.com

- **Emily J. Harris**
  eharris@corrcronin.com, sdamon@corrcronin.com, reception@corrcronin.com

- **Todd M. Hinnen**
  thinnen@perkinscoie.com, docketsea@perkinscoie.com, jhernandez@perkinscoie.com

- **Michael David Myers**
  mmyers@myers-company.com, tpak@myers-company.com, evarriano@myers-company.com, slin@myers-company.com

- **Jennifer J. Oxley**
  oxley@wtotrial.com, wallace@wtotrial.com

- **Kathryn A. Reilly**
  reilly@wtotrial.com, cljones@wtotrial.com, meyer@wtotrial.com

- **Richard E. Spoonemore**
  rspoonemore@sylaw.com, matt@sylaw.com, rspoonemore@hotmail.com, theresa@sylaw.com, stacy@sylaw.com

- **Chris Robert Youtz**
  chris@sylaw.com, matt@sylaw.com, theresa@sylaw.com, stacy@sylaw.com

and I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

- (No manual recipients)

DATED: May 23, 2019, at Seattle, Washington.

s/ Richard E. Spoonemore

Richard E. Spoonemore (WSBA #21833)

JOINT MOTION OF ALL PARTIES FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT  – 25
[Case No. 2:18-cv-00413-TSZ]